IN THE MATTER OF THE APPEAL OF: NORTH CAROLINA FORESTRY FOUNDATION, INC., FROM THE ASSESSMENT OF ITS PROPERTY KNOWN AS THE "HOFMANN FOREST" FOR AD VALOREM TAXATION BY JONES COUNTY FOR 1975

No. 7710SC190

(Filed 7 March 1978)

1. Taxation § 22— ad valorem taxes—nonprofit corporation—no exemption as property used for educational or charitable purposes—no exemption as State property

Forest land owned by a nonprofit corporation and leased to a packaging manufacturer which used the forest as a source of timber and pulpwood was not exempt from ad valorem taxation as property used exclusively for educational and charitable purposes or as State property. G.S. 105-275(12); G.S. 105-278.4; G.S. 105-278.6; G.S. 116-16.

**2. Taxation § 25— ad valorem taxes—valuation—long-term lease**

A foundation which owned forest land was not entitled to have the value of a long-term lease of the property excluded from the valuation of the property for ad valorem taxes. G.S. 105-273(8).

APPEAL by petitioner from *Herring, Judge.* Judgment entered 3 November 1976, in Superior Court, WAKE County. Heard in the Court of Appeals 12 January, 1978.

Petitioner, North Carolina Forestry Foundation, Inc., (hereinafter "Foundation") was incorporated in 1929, and, in 1934, bought the "Hofmann Forest," which covers 31,648 acres in Jones County and 81,867 in Onslow County. The Foundation, a non-profit organization, was incorporated for the expressed purpose of promoting the science of forestry by holding woodlands for educational and scientific purposes. It was stipulated that in 1934 the Attorney General expressed his opinion that the forest should be exempt from ad valorem taxes "because of the public nature of the [Foundation] and the purpose for which these lands are held . . . ." In 1945, the Foundation signed a ninety-nine year lease with the Halifax Paper Company, Inc., which lease included the following purpose:

". . . [I]n order to properly prosecute the objects for which the Foundation was organized, it is necessary and desirable that an outlet be found having the disposition by sale of merchantable timber, pulpwood and wood-products, equal to the annual growth of all merchantable timber, trees, and wood, growing upon the real property. . . ."

The "contract" further provided that the Foundation was in need of income for debt payment and equipment. Hoerner-Waldorf Corporation (hereinafter "Corporation"), a packaging manufacturer, now holds the lease which affords the right to cut timber and pulpwood. It holds all hunting rights. The Corporation in return pays substantially below market price for the timber, constructs roads, maintains drainage ditches and fire lines across the forest and permits scientists and students to use the forest from time to time for study.

It was stipulated that, in 1969, the Attorney General expressed his opinion that the forest was no longer exempt. The

Foundation chose the option available under former G.S. 105-279 of paying ten cents per acre rather than the standard taxation. Former G.S. 105-279 was repealed in 1971, effective 1974. The Foundation filed timely application for exemption on several grounds; that the forest was used exclusively for educational or charitable purposes, that it was owned by the University of North Carolina. G.S. 105-275(12), 105-278.4, 105-278.6, 116-16. The Foundation obtained a hearing before the Jones County Board of Equalization which held the forest non-exempt. The Board also heard argument as to the proper assessment of the property and adopted the County's figure of $3,164,800 for 1975. The Foundation appealed to the Tax Commission which held an extensive hearing.

The Foundation's evidence tended to show that three of the Foundation's directors are professors of forestry at State University. Upon dissolution of the Foundation, all its assets are to be distributed to State. The revenues received from the Corporation are its major source of revenue, and the funds pay the salaries of its two forest employees, one of whom, the supervisor, visits the forest twice a week. The Foundation donates funds to State, but is not required to do so. The Foundation claimed that the Corporation is nothing more than its agent, and as such, is permitted to purchase lumber and pulpwood at reduced rates. In 1974 the Corporation cut 10,700 cords of pulpwood and 275,000 cords of saw timber, and it maintains from 25 to 100 workers in the forest. The Corporation is not required to reseed but usually does so, after consulting with the Foundation supervisor. The Corporation permits students and scientists the use of the Forest, ". . . provided, however, that such study groups or students will do nothing whatsoever to interfere with any program undertaken or in progress by [the Corporation] in or on Hofmann Forest. . . ." In the year 1974 two groups used the Forest for educational purposes, the State Department of Natural and Economic Resources for 100 days, and State University for 12. The Corporation's manager testified that it conducted public tours, that this practice is fairly common among timber companies and that the research gleaned from the forest benefited it commercially. The Forest

was its main source of timber and pulpwood and, on recross-examination, its manager stated that:

> "The *primary* interest of Hoerner-Waldorf Corporation in its operation of the Hofmann Forest *is to have a source of pulpwood and timber for its operations*, although, as I mentioned before, when we assumed responsibility for harvesting and development work, we recognized that we were taking on other responsibilities in regard to the forest." [Emphasis added.]

The County offered little direct evidence on the issue of exemption.

On the issue of valuation, the Foundation presented evidence that the $100 an acre assessed by the County was $70 too high because the County was arbitrary and because it failed to deduct from the assessment the encumbrance of the long-term leasehold. The Foundation argued for an assessment of $30 per acre, reached by the capitalization method of valuation, which method necessarily reduced the assessment by the amount assessed to the encumbrance. The County placed into evidence its 1974 general reappraisal and argued that its assessment was in accord. It argued further that the law was clearly against deducting for the leasehold encumbrance.

The Tax Commission made findings of fact and concluded that the Forest was not exempt and that the County's assessment was correct. The Superior Court affirmed the Tax Commission's conclusion. From this judgment the Foundation appeals.

*Poyner, Geraghty, Hartsfield & Townsend by Thomas L. Norris, Jr. and Curtis A. Twiddy for petitioner appellant, North Carolina Forestry Foundation, Inc.*

*James R. Hood for Jones County; Joyner & Howison by R. C. Howison, Jr. and J. E. Tucker for both Jones and Onslow Counties, respondent-appellant-appellees.*

CLARK, Judge.

[1] The Foundation contends first that its forest property is exempt from ad valorem taxation, and second that, even if it is not exempt, the County's assessment is erroneous. In a companion

case, In The Matter Of The Appeal Of: North Carolina Forestry Foundation, Inc. From The Assessment Of Its Property Known As The "Hofmann Forest" For Ad Valorem Taxation By Onslow County For 1974 And 1975, No. 76CVS2618, this Court in an opinion filed concurrently decided the issue of exemption, holding that the Hofmann Forest was not exempt from ad valorem taxation, and we accept and concur in the decision.

[2]  The Foundation's attack on the trial court's affirmation of the Tax Commission's adoption of the County's assessment is without merit. In order to show error, the taxpayer must show that the tax supervisor used an arbitrary method of valuation, or that he used an illegal method. The assessment must substantially exceed the true value of the property. *In re Appeal of Amp, Inc.*, 287 N.C. 547, 215 S.E. 2d 752 (1975). The Foundation produces no evidence that the assessment substantially exceeded the true value or that the supervisor was arbitrary. The Foundation's main attack went to the method of valuation which failed to exclude the leasehold. Although a lease is a chattel real, and, prior to 1971, intangible personal property, it has always been taxed ad valorem and not by the State intangibles tax. *Bragg, Inv. Co. v. Cumberland County*, 245 N.C. 492, 96 S.E. 2d 341 (1957). While it is true that, prior to 1971, the leasehold was taxable to the lessee, and deducted from the value of the fee taxable to the lessor, the 1971 General Assembly changed the arrangement. Now leases are intangible personal property *only* when they are leases in "exempted real property." G.S. 105-273(8). Thus, the only leases taxable to the lessee are leases on fees exempt from taxation on the lessor. Where the fee is nonexempt, the lease is not intangible personal property and is taxable to the owner, as is all real and personal property not exempt under G.S. 105-274. The Foundation's exclusion of the long-term lease from the assessment of ad valorem taxes is directly contrary to the statutory mandate.

The Superior Court's affirmation of the Tax Commission's holdings, adopting the County Boards conclusions that the Forest is non-exempt property and that the Jones' County assessment of $100 an acre was not excessive, is

Affirmed.

Judges MORRIS and MITCHELL concur.