IN THE MATTER OF: THE APPEAL OF CHAMPION INTERNATIONAL COR-
PORATION FROM THE VALUATION AND TAXATION OF ITS INTER-
EST IN THE HOFMANN FOREST BY JONES COUNTY AND ONSLOW
COUNTY FOR 1982

No. 8410PTC115

(Filed 21 May 1985)

1. **Taxation § 25; Constitutional Law § 6.1— taxation of leased interest in State
owned forestlands**

     Taxation of Champion's interest in the Hofmann Forest by the counties in
which the forest is located does not violate the prohibition against taxing
State, county, and municipal property in Sec. 2(3) of Article V of the North
Carolina Constitution where Champion leased Hofmann from the State, owned

the exclusive right to timber in the forest, and used the forest as a commercial timber farm with the lessor having no control over the operation of the forest. The tax is on Champion's use of the property; it does not tax the State's property or make the State accountable therefor. G.S. 105-282.7.

**2. Taxation § 25— ad valorem taxation of leasehold interests in State timberland —"use" not unconstitutionally vague**

G.S. 105-282.7 is not unconstitutionally vague in its taxation of the user of State owned forestland. The general phraseology of "made available to and used by" will be limited to the preceding categories or like categories of land interest: "leased, loaned."

**3. Taxation § 2.2; Constitutional Law § 20— classification of use of public timberland for taxation—not unconstitutional**

G.S. 105-282.7(a) does not violate the North Carolina Constitution by taxing the use of public cropland or forestland as if the lessee or user owned it while other leasehold interests are taxed at true value. Classifying for taxation leasehold interests in government owned croplands and forestlands that are used in connection with a business conducted for profit is reasonable and within the Legislature's authority. Sec. 2(1) and Sec. 2(2) of Art. V of the North Carolina Constitution.

**4. Taxation § 2.3— taxation of leased interest in State forestland—no discrimination within class**

G.S. 105-282.7 is not unconstitutional in that it applies only to Champion because the statute by its terms uniformly operated without discrimination or distinction upon all members of the described class and Champion's own evidence established only that no one knew whether the statute had been applied to other taxpayers during the one year it had been in effect.

**5. Statutes § 8— G.S. 105-282.7 not retrospective**

G.S. 105-282.7 was not an unconstitutional retrospective tax because it was ratified in 1981, did not become effective until 1 January 1982, and Champion was not taxed under it for any period prior to the enactment. Sec. 16, Art. I of the North Carolina Constitution.

APPEAL by Champion International Corporation from the decision of the North Carolina Property Tax Commission. Decision entered 1 September 1983 in Raleigh, North Carolina. Heard in the Court of Appeals 24 October 1984.

The Hofmann Forest, a 78,927 acre tract of wood and swamp land situated in Jones and Onslow Counties, has been owned by the State of North Carolina since 1977. Since 1945 the forest has been leased to Champion International Corporation or its predecessor in interest, Halifax Paper Company, Inc., under leases executed by the former owner, The North Carolina Forestry Foundation, Inc. In its 1981 session the General Assembly enacted

In re Champion International Corp.

G.S. 105-282.7, which permits counties and municipalities under certain circumstances to tax the use of certain government-owned forestlands and croplands when the lands are used in connection with a business conducted for profit. After the statute became effective in 1982 Jones County assessed ad valorem taxes against Champion's interest in the 31,075 acres of Hofmann Forest that are situated in that county, and Onslow County did likewise as to Champion's interest in the 47,852 acres of Hofmann Forest that are in that county. Champion's applications for exemption from the tax were denied and, except for certain modifications irrelevant to this appeal, the assessments made were approved by the Board of Equalization and Review of each county, and by the Property Tax Commission, following Champion's appeal to that body and extended hearings conducted by it.

The Property Tax Commission's comprehensive findings of fact include the following: Under its lease from the former owner of Hofmann Forest, Champion has the exclusive right to cut timber in the forest until the year 2044; Champion has the final say in determining when, where and how to plant seedlings and cut timber and uses Hofmann Forest as a commercial timber farm in the same manner that it uses timberland it owns in fee; it controls the hunting rights for the forest and leases them to hunting clubs and others as and when it sees fit; the lessor has no control over Champion's operation of Hofmann Forest. Champion relies on the Hofmann Forest for a consistent and dependable supply of pulpwood for its Roanoke Rapids plant, and in the past four years alone Champion has invested three million dollars in the forest. The fee value of Hofmann Forest for 1982 is $9,151,706. After making the above and other pertinent findings, the Commission concluded that the taxes against Champion's use of the Hofmann Forest have been validly assessed. Champion's appeal is from that determination.

*Bailey, Dixon, Wooten, McDonald & Fountain, by David M. Britt, John N. Fountain and Gary K. Joyner, for taxpayer appellant Champion International Corporation.*

*Hunton & Williams, by David Dreifus, and William L. S. Rowe, Richmond, Virginia, for appellees Jones County and Onslow County.*

---

---

PHILLIPS, Judge.

This appeal is based *only* on constitutional grounds. It is contended that taxing Champion's interest in the Hofmann Forest under the provisions of G.S. 105-282.7 violates the constitutions of both this State and the United States in several different respects. None of these contentions have merit in our opinion and we uphold the constitutionality of G.S. 105-282.7, which reads as follows:

(a) When any cropland or forestland owned by the United States, the State, a county or a municipal corporation is leased, loaned or otherwise made available to and used by a person, as defined in G.S. 105-273(12), in connection with a business conducted for profit, the lessee or user of the property is subject to taxation to the same extent as if the lessee or user owned the property. As used in this section, "forestland" has the same meaning as in G.S. 105-277.2(2), and "cropland" means agricultural land and horticultural land as defined in G.S. 105-277.2(1) and (3) respectively.

(b) This section does not apply to cropland or forestland for which payments in lieu of taxes are made in amounts equivalent to the amount of tax that could otherwise be lawfully assessed.

(c) Taxes levied pursuant to this Article are levied on the privilege of leasing or otherwise using tax-exempt cropland or forestland in connection with a business conducted for profit. The purpose of these taxes is to eliminate the competitive advantage accruing to profit-making enterprises from the use of tax-exempt property.

## I

### Tax on an Exempt Fee

[1] Taxing State, county, and municipal corporation property is forbidden by Sec. 2(3) of Article V of the North Carolina Constitution and appellant argues that the effect of G.S. 105-282.7 in this instance is to impermissibly tax property that belongs to the State. In determining the constitutionality of a State tax we are concerned only with its practical operation. *Lawrence v. State Tax Commission*, 286 U.S. 276, 280, 76 L.Ed. 1102, 1106, 52 S.Ct.

556, 557 (1932). To determine whether this tax violates the State's Constitution we must look beyond the labels. *Detroit v. Murray Corp.*, 355 U.S. 489, 492, 2 L.Ed. 2d 441, 445, 78 S.Ct. 458, 460 (1958). The practical operation of the tax appears in the statute: "the lessee or user of the property is subject to taxation to the same extent as if the lessee or user owned the property." It taxes Champion's use; it does not tax the State's property or make the State accountable therefor. Taxing the beneficial use of property, as distinguished from taxing the property itself, has been common practice in this country for a long time. *Henneford v. Silas Mason Co., Inc.*, 300 U.S. 577, 582-83, 81 L.Ed. 814, 818-19, 57 S.Ct. 524, 526-27 (1937).

In its brief on appeal, Champion euphemistically characterizes the agreements under which it uses the forest as a "management contract." But the Commission found and concluded that "under the terms of the Agreements to which Champion is a successor-party, Champion is a 'lessee or user' of Hofmann Forest" within the purview of G.S. 105-282.7. These findings and conclusions, supported by "competent, material and substantial evidence," are binding. *In re Appeal of Amp, Inc.*, 287 N.C. 547, 561, 215 S.E. 2d 752, 761 (1975). Furthermore, the very two Agreements that the Commission found makes Champion a lessee or user of the forest were referred to by this Court in an earlier tax appeal by the former owner of Hofmann Forest, as follows: "In 1945, the Foundation signed a ninety-nine year lease with the Halifax Paper Company, Inc. . . ." *In re Forestry Foundation*, 35 N.C. App. 430, 431, 242 S.E. 2d 502, 502-503 (1978), *aff'd*, 296 N.C. 330, 250 S.E. 2d 236 (1979). Taxing the leasehold interests in exempted real property has long been approved. *See*, G.S. 105-273 (8); *Bragg Investment Co., Inc. v. Cumberland County*, 245 N.C. 492, 96 S.E. 2d 341 (1957); and *In re Forestry Foundation, supra*.

II

Tax on a "User" of Property

[2] Champion next contends that G.S. 105-282.7 by taxing the "user of the property" is unconstitutionally vague. This assertion is without merit. The statute itself sufficiently defines the term "user":

(a) When any cropland or forestland owned by the United States, the State, a county or a municipal corporation is *leased, loaned, or otherwise made available to and used by a person* . . . . (Emphasis added.)

Where general words follow a specific designation of subjects or things the statutory construction rule of *ejusdem generis* requires that the meaning of the general words will be construed as restricted by the particular designations and as including only things of the same kind, character, and nature. *State v. Fenner*, 263 N.C. 694, 140 S.E. 2d 349 (1965). In this instance, then, the general phraseology of "made available to and used by" will be limited to the preceding categories or like categories of land interest: "leased, loaned," and we see no unconstitutional vagueness therein.

### III

### True Value

**[3]**   Champion next contends that G.S. 105-282.7(a), by taxing its interest "to the same extent as if the lessee or user owned the property," while other leasehold interests are taxed at true value, violates Sec. 2(1) and Sec. 2(2) of Article V of the North Carolina Constitution, which require that taxation be done in a just and equitable manner and that no class of property be taxed except by uniform rule and that every classification be made by general law. These constitutional provisions, in our view, are no bar to the tax assessed against Champion.

That the right to use property for one's own benefit and possible profit may have a value comparable to the value of the property itself was recognized in *U.S. v. City of Detroit*, 355 U.S. 466, 2 L.Ed. 2d 424, 78 S.Ct. 474 (1958); a case quite similar to this one. In that case the Michigan statute permitted lessees of government-owned property to be taxed to the same extent as if they owned the property when it was used by a business conducted for profit. In upholding the constitutionality of the statute as applied to a corporation that had leased a portion of a government-owned industrial plant and used it in connection with its business, the Supreme Court of the United States stated that:

> . . . use of exempt property is worth as much as use of comparable taxed property during the same interval . . . [It is a] permissible exercise of its taxing power for Michigan to compute its tax by the value of the property used.

355 U.S. at 470, 2 L.Ed. 2d at 427, 78 S.Ct. at 476. The requirement of G.S. 105-282.7 in this respect is that the tax exempt property be used "in connection with a business conducted for profit." Champion's is such a business and Hofmann Forest has certainly been used in connection with it. That Champion has not yet *actually made* a profit on it is irrelevant; it operates the Hofmann Forest as a commercial timber farm, rather than as an eleemosynary enterprise of some kind, and it is appropriate for the taxing authorities of the two counties to treat it accordingly. Like the Michigan statute, G.S. 105-282.7 applies to every party in the state that uses the property designated in connection with a business conducted for profit. The main difference between the two statutes is that the North Carolina statute applies to only cropland and forestland, whereas the Michigan statute applied to all real property.

The classification made here is clearly within the Legislature's authority, in our opinion. Sec. 2(2) of Article V of the North Carolina Constitution provides that "[o]nly the General Assembly shall have the power to classify property for taxation," and it has been held that the only limitation upon this power is that the classification "be founded upon reasonable, and not arbitrary, distinctions." *Clark v. Maxwell*, 197 N.C. 604, 606, 150 S.E. 190, 192 (1929), *aff'd*, 282 U.S. 811 (1931). Thus, the wisdom of the classification made is not for us to determine. Our duty is only to ascertain if the taxing power has been constitutionally exercised, and in this instance we are of the opinion that it has. Our Supreme Court has said "the power to classify subjects of taxation carries with it the discretion to select them, and . . . a wide latitude is accorded taxing authorities, . . ." *Charlotte Coca-Cola Bottling Co. v. Shaw*, 232 N.C. 307, 309, 59 S.E. 2d 819, 821 (1950). The constitutional requirements are met if it appears that the classification has "been made upon some 'reasonable ground— something that bears a just and proper relation to the attempted classification, and not a mere arbitrary selection.'" *Caldwell Land and Lumber Co. v. Smith*, 151 N.C. 70, 75, 65 S.E. 641, 643-44 (1909). Classifying for taxation leasehold interests in government-

In re Champion International Corp.

owned croplands and forestlands that are used in connection with a business conducted for profit seems eminently reasonable to us.

IV

Champion as Sole Taxpayer

[4] Still another argument is that G.S. 105-282.7 is invalid because its effect is to tax only the appellant. This contention is without legal or factual support. On its face, G.S. 105-282.7 applies to all lessees or users of croplands or forestlands owned by the United States, the State, a county, or a municipal corporation that are used in connection with a business conducted for profit. Since the statute by its terms uniformly operates without discrimination or distinction upon all persons composing the described class, it meets the requirements of the Constitution of North Carolina above referred to. *Hajoca Corp. v. Clayton*, 277 N.C. 560, 178 S.E. 2d 481 (1971). Champion's own evidence at the Commission hearing did not show that the law applies only to it; its evidence established only that no one knew whether the statute had been applied to other taxpayers during the one year it had been in effect. We cannot assume that the statute unconstitutionally applies only to Champion.

V

Ex Post Facto Application

[5] Finally, it is contended that as to Champion G.S. 105-282.7 is a retrospective tax in violation of Sec. 16 of Article I of the Constitution of North Carolina. This contention has no merit. The statute was ratified in 1981, did not become effective until 1 January 1982, and Champion has not been taxed under it for any period prior to the enactment.

Affirmed.

Judges WHICHARD and JOHNSON concur.