UNITED STATES et al. v. CITY OF DETROIT.

No. 26.   Argued November 14, 1957.—Decided March 3, 1958.

*Roger Fisher* argued the cause and was on a reply brief for the United States. Also on a brief were *Solicitor General Rankin, Acting Assistant Attorney General Stull, Ralph S. Spritzer, J. Dwight Evans, Jr., A. F. Prescott* and *H. Eugene Heine, Jr.* for the United States, and *Glenn M. Coulter* who submitted on the brief for the Borg-Warner Corporation (Detroit Gear Division), appellant.

*Roger P. O'Connor* argued the cause for appellee. With him on the brief were *Andrew DiMaggio* and *Julius C. Pliskow.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The United States asks this Court to strike down as unconstitutional a tax statute of the State of Michigan as applied to a lessee of government property. In general terms this statute, Public Act 189 of 1953, provides that when tax-exempt real property is used by a private party in a business conducted for profit the private party is subject to taxation to the same extent as though he owned the property.[1]

---

[1] Now compiled in 6 Mich. Stat. Ann., 1950 (1957 Cum. Supp.), §§ 7.7 (5) and (6). In full the Act reads:

"AN ACT to provide for the taxation of lessees and users of tax-exempt property.

. . . . .

"Sec. 1. When any real property which for any reason is exempt from taxation is leased, loaned or otherwise made available to and

Here the United States was the owner of an industrial plant in Detroit, Michigan. It leased a portion of that plant to the Borg-Warner Corporation at a stipulated annual rental for use in the latter's private manufacturing business. The lease provided that Borg-Warner could deduct from the agreed rental any taxes paid by it under Public Act 189 or similar state statutes enacted during the term of the lease, but the Government reserved the right to contest the validity of such taxes.

On January 1, 1954, a tax was assessed against Borg-Warner under Public Act 189. The tax was based on the value of the property leased and computed at the rate used for calculating real property taxes. Under protest Borg-Warner paid part of the assessment. Subsequently the United States and Borg-Warner filed this suit in a state court for refund of the amount paid. They charged that the tax was repugnant to the Constitution of the United States because it imposed a levy upon government prop-

---

used by a private individual, association or corporation in connection with a business conducted for profit, except where the use is by way of a concession in or relative to the use of a public airport, park, market, fair ground or similar property which is available to the use of the general public [*sic*], shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property: Provided, however, That the foregoing shall not apply to federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed or property of any state-supported educational institution.

.      .      .      .      .

"Sec. 2. Taxes shall be assessed to such lessees or users of real property and collected in the same manner as taxes assessed to owners of real property, except that such taxes shall not become a lien against the property. When due, such taxes shall constitute a debt due from the lessee or user to the township, city, village, county and school district for which the taxes were assessed and shall be recoverable by direct action of assumpsit."

erty and discriminated against those using such property. The lower court however upheld the tax and the Michigan Supreme Court affirmed. 345 Mich. 601, 77 N. W. 2d 79. It ruled that the tax was neither discriminatory nor on the property of the United States but instead was a tax on the lessee's privilege of using the property in a private business conducted for profit. We noted probable jurisdiction of an appeal by the United States and Borg-Warner from this decision. 352 U. S. 962.

This Court has held that a State cannot constitutionally levy a tax directly against the Government of the United States or its property without the consent of Congress. *M'Culloch* v. *Maryland,* 4 Wheat. 316; *Van Brocklin* v. *Tennessee,* 117 U. S. 151. At the same time it is well settled that the Government's constitutional immunity does not shield private parties with whom it does business from state taxes imposed on them merely because part or all of the financial burden of the tax eventually falls on the Government. See, *e. g., James* v. *Dravo Contracting Co.,* 302 U. S. 134; *Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466; *Alabama* v. *King & Boozer,* 314 U. S. 1. Of course in determining whether a tax is actually laid on the United States or its property this Court goes beyond the bare face of the taxing statute to consider all relevant circumstances.

The Michigan statute challenged here imposes a tax on private lessees and users of tax-exempt property who use such property in a business conducted for profit. Any taxes due under the statute are the personal obligation of the private lessee or user. The owner is not liable for their payment nor is the property itself subject to any lien if they remain unpaid. So far as the United States is concerned as the owner of the exempt property used in this case it seems clear that there was no attempt to levy against its property or treasury.

Nevertheless the Government argues that since the tax is measured by the value of the property used it should be treated as nothing but a contrivance to lay a tax on that property. We do not find this argument persuasive. A tax for the beneficial use of property, as distinguished from a tax on the property itself, has long been a commonplace in this country. See *Henneford* v. *Silas Mason Co.,* 300 U. S. 577, 582–583. In measuring such a use tax it seems neither irregular nor extravagant to resort to the value of the property used; indeed no more so than measuring a sales tax by the value of the property sold. Public Act 189 was apparently designed to equalize the annual tax burden carried by private businesses using exempt property with that of similar businesses using nonexempt property. Other things being the same, it seems obvious enough that use of exempt property is worth as much as use of comparable taxed property during the same interval. In our judgment it was not an impermissible subterfuge but a permissible exercise of its taxing power for Michigan to compute its tax by the value of the property used.

A number of decisions by this Court support this conclusion. For example in *Curry* v. *United States,* 314 U. S. 14, we upheld unanimously a state use tax on a contractor who was using government-owned materials although the tax was based on the full value of those materials. Similarly in *Esso Standard Oil Co.* v. *Evans,* 345 U. S. 495, the Court held valid a state tax on the privilege of storing gasoline even though that part of the tax which was challenged was measured by the number of gallons of government-owned gasoline stored with the taxpayer. While it is true that the tax here is measured by the value of government property instead of by its quantity as in *Esso* such technical difference has no meaningful significance in determining whether the Con-

stitution prohibits this tax. Still other cases further confirm the proposition that it may be permissible for a State to measure a tax imposed on a valid subject of state taxation by taking into account government property which is itself tax-exempt. See, *e. g., Home Insurance Co.* v. *New York,* 134 U. S. 594; *Plummer* v. *Coler,* 178 U. S. 115; *Educational Films Corp.* v. *Ward,* 282 U. S. 379; *Pacific Co.* v. *Johnson,* 285 U. S. 480, 489–490.

In urging that the tax assessed here be struck down the appellants rely primarily on *United States* v. *Allegheny County,* 322 U. S. 174, but we do not think that case is at all controlling. In *Allegheny* the Court ruled invalid a tax which the State did not contend was "anything other than the old and widely used ad valorem general property tax" to the extent it was laid on government property in the hands of a private bailee. Reviewing all the circumstances the Court concluded that the tax was simply and forthrightly imposed on the property itself, not on the privilege of using or possessing it. In carefully reserving the question whether the bailee could be taxed for exercising such privileges, the Court stated:

"Whether such a right of possession and use in view of all the circumstances could be taxed by appropriate proceedings we do not decide.

. . . . .

"Actual possession and custody of Government property nearly always are in someone who is not himself the Government but acts in its behalf and for its purposes. He may be an officer, an agent, or a contractor. His personal advantages from the relationship by way of salary, profit, or beneficial personal use of the property may be taxed as we have held." 322 U. S., at 184, 186, 187.

Here we have a tax which is imposed on a party using tax-exempt property for its own "beneficial personal use" and "advantage." [2]

It is undoubtedly true, as the Government points out, that it will not be able to secure as high rentals if lessees are taxed for using its property. But as this Court has ruled in *James* v. *Dravo Contracting Co.,* 302 U. S. 134, *Alabama* v. *King & Boozer,* 314 U. S. 1, and numerous other cases,[3] the imposition of an increased financial burden on the Government does not, by itself, vitiate a state tax. *King & Boozer* offers a striking example. There a private party, acting under contract with the United States, purchased materials which the contract required him to transfer to the Government. At the same time the Government agreed to pay his costs plus a fixed fee so a state excise levied on his purchase was passed directly and completely to the Government. Yet despite the immediate financial burden imposed on the United States, this Court, without dissent, upheld the tax.

We are aware of course that the general principles laid down in *Dravo, King & Boozer* and subsequent cases do not resolve all the difficulties in the area of intergovernmental tax immunity, but they were adopted by this

---

[2] The Government also places reliance on *Macallen Co.* v. *Massachusetts,* 279 U. S. 620. The weight of that case as a precedent was substantially impaired by its narrow distinction in *Educational Films Corp.* v. *Ward,* 282 U. S. 379, 392, and the reasoning of the Court in *Pacific Co.* v. *Johnson,* 285 U. S. 480, 495. Later in *New York ex rel. Northern Finance Corp.* v. *Lynch,* 290 U. S. 601, a case which seems indistinguishable from *Macallen* on its facts, the Court in a per curiam opinion upheld the same kind of state tax which it had struck down in *Macallen.*

[3] See, *e. g., Graves* v. *New York ex rel. O'Keefe,* 306 U. S. 466, 485–486; *Helvering* v. *Gerhardt,* 304 U. S. 405, 420–422; *Helvering* v. *Mountain Producers Corp.,* 303 U. S. 376; *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514.

Court, with the full support of the Government, as the least complicated, the most workable and the proper standards for decision in this much litigated and often confused field and we adhere to them.[4]

It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Government or those with whom it deals. Cf. *M'Culloch* v. *Maryland,* 4 Wheat. 316. But here the tax applies to every private party who uses exempt property in Michigan in connection with a business conducted for private gain. Under Michigan law this means persons who use property owned by the Federal Government, the State, its political subdivisions, churches, charitable organizations and a great host of other entities.[5] The class defined is not an arbitrary or invidiously discriminatory one. As suggested before the legislature apparently was trying to equate the tax burden imposed on private enterprise using exempt property with that carried by similar businesses using taxed property. Those using exempt property are required to pay no greater tax than

---

[4] In its brief in *King & Boozer* the Government strongly urged the Court to abandon whatever remained of the "economic burden" test, which at one time was used to range far afield in striking down state taxes, because that test was "illusory and incapable of consistent application."

[5] In somewhat greater detail, Michigan statutes exempt from real property taxes all property belonging to the Federal Government, the State, political subdivisions of the State, charitable organizations, educational or scientific institutions, fraternal or secret societies (if used for charitable purposes), churches, libraries, religious societies, cemeteries, state or county agricultural societies, certain corporations making payments to the State in lieu of taxes, nonprofit trusts (if used for hospital or public health purposes), boy or girl scout organizations (up to 160 acres), certain veterans' homes and land dedicated to public use. See 6 Mich. Stat. Ann., 1950, § 7.7.

that placed on private owners or passed on by them to their business lessees. In the absence of such equalization the lessees of tax-exempt property might well be given a distinct economic preference over their neighboring competitors, as well as escaping their fair share of local tax responsibility. Cf. *Henneford* v. *Silas Mason Co.*, 300 U. S. 577, 583–585. Nor is there any showing that the tax is in fact administered to discriminate against those using federal property. To the contrary undisputed evidence introduced by appellees demonstrates that lessees of other exempt property have also been taxed.[6]

Today the United States does business with a vast number of private parties. In this Court the trend has been to reject immunizing these private parties from nondiscriminatory state taxes as a matter of constitutional law. Cf. *Penn Dairies* v. *Milk Control Comm'n,* 318 U. S. 261, 270. Of course this is not to say that Congress, acting within the proper scope of its power, cannot confer immunity by statute where it does not exist constitutionally. Wise and flexible adjustment of intergovernmental tax immunity calls for political and economic considerations of the greatest difficulty and delicacy. Such complex problems are ones which Congress is best qualified to resolve. As the Government points out Congress has already extensively legislated in this area by per-

---

[6] The Government points to the fact that Public Act 189 creates an exception to the tax on users where payments are made by the United States "in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed" as manifesting a purpose to tax government property. But this exemption, which if anything operates in the Government's favor, avoids the possibility of a double contribution to the revenues of the State where private parties use federal property for their own commercial purposes. Moreover, it is not at all inconceivable that the Government might, in one way or another, pass the economic burden of such in-lieu payments to the taxpayer using its property even though he was also compelled to pay the tax imposed by Public Act 189.

mitting States to tax what would have otherwise been immune. To hold that the tax imposed here on a private business violates the Government's constitutional tax immunity would improperly impair the taxing power of the State.

*Affirmed.*

[For opinion of MR. JUSTICE FRANKFURTER, see *post,* p. 495.]

[For opinion of MR. JUSTICE HARLAN, see *post,* p. 505.]

MR. JUSTICE WHITTAKER, with whom MR. JUSTICE BURTON joins, dissenting.

I respectfully dissent. Understanding of the bases of my convictions and reasons for doing so requires a rather full treatment of the case.

The United States owned an industrial plant in Detroit which it had leased, for a short term, to Borg-Warner, at a fixed annual rental, for use in its private business. The lease provided that if the lessee was required to pay any taxes upon the property to the State of Michigan, under the statute quoted, *infra,* or otherwise, during the term of the lease, the lessee might deduct the same from the rents, but the Government reserved the right to contest the validity of any such taxes.

The State of Michigan had recently enacted a statute, known as Public Act 189 of 1953 (6 Mich. Stat. Ann., 1957 Cum. Supp., § 7.7 (5) and (6)) which, in pertinent part, says:

> *"Taxation of Lessees and Users of Tax-Exempt Real Property.*
>
> "SECTION 1. When any real property which for any reason *is exempt from taxation* is leased, loaned or otherwise made available to *and used by* a private

individual, association or corporation in connection with a business conducted for profit, except where the use is by way of a concession in or relative to the use of a public . . . park . . . or similar property which is available to the use of the general public, shall [*sic*] be subject to taxation *in the same amount and to the same extent as though the lessee or user were the owner of such property: Provided,* however, That the foregoing shall not apply *to federal property* for which payments are made in lieu of taxes in amounts equivalent to taxes *which might otherwise be lawfully assessed* . . . .

"SEC. 2. Taxes shall be assessed to such lessees or users of real property and collected in the same manner as taxes *assessed to owners of real property,* except that such taxes *shall not become a lien against the property.* When due, such taxes shall constitute a debt due from the lessee or user to the township, city, village, county and school district for which the taxes were assessed and shall be recoverable by direct action of *assumpsit.*" (Emphasis supplied.)

Acting under that statute, the City of Detroit levied a tax against the lessee, computed on the assessed value of the Government's industrial plant and calculated in the same manner and at the same rate applicable to all real estate in Michigan. Protest was made without avail and, after administrative remedies were exhausted without success, the tax was paid, and the United States and the lessee, Borg-Warner, sued for refund in the state court, contending that the tax was repugnant to the Constitution because it constituted a tax upon property owned by the Government and discriminated against the lessee. The trial court sustained the tax, and the Supreme Court of Michigan affirmed (345 Mich. 601, 77 N. W. 2d 79), holding that the tax was neither *on* property owned by the United States nor discriminatory against the lessee,

but was, instead, a nondiscriminatory tax on the lessee's privilege of using the Government's property in private business for profit. The case comes here on appeal.

The Court today affirms the decision and judgment of the Michigan courts, and sustains the tax. I believe that decision is not only unsound in principle but is also opposed to the precedents, and that appellants are quite right in both of their contentions. To me, it is evident that this tax has been levied, in major part at least, directly (though, perhaps, indirectly in form) upon a property interest of the Government and is, therefore, constitutionally invalid under *M'Culloch* v. *Maryland,* 4 Wheat. 316, and the myriad of uniformly conforming cases decided since its rendition in 1819.

In determining the nature of a tax we are not bound by, nor even permitted solely to look to, labels affixed by the State, but, rather, as pointed out in *United States* v. *Allegheny County,* 322 U. S. 174, 184:

> " 'Where a federal right is concerned we are not bound by the characterization given to a state tax by state courts or legislatures, or relieved by it from the duty of considering the real nature of the tax and its effect upon the federal right asserted.' *Carpenter* v. *Shaw,* 280 U. S. 363, 367–368."

Examination of the nature of this tax, and of its effect upon the federal rights asserted by appellants, shows that it purports to be a tax upon "real property which . . . is exempt from taxation," if it is "made available to and used by a private individual . . . or corporation in connection with a business conducted for profit," including "federal property for which payments [have not been] made in lieu of taxes in amounts equivalent to [general ad valorem] taxes which might otherwise be lawfully assessed" (§ 1), and the tax is to be "assessed to such lessees or users . . . in the same manner as taxes [are] assessed to owners of real property," though the tax "shall

not become a lien against the property," but it "shall constitute a debt due from the lessee or user." § 2.

Thus, the tax, as it applies to this case, is computed not upon the value of the lessee's short-term leasehold estate in—nor, hence, upon the value of its term right to use—the federal property, but, rather, is computed upon the entire value of the whole of the federal property, in the same manner and at the same rate and amount, "as though the lessee or user were the owner of such property" (§ 1), but—and I think this is of particular significance—the tax is not to "apply to federal property" *if* the Government waives its sovereign immunity and pays general ad valorem taxes on the property, or the equivalent. Does not this really admit that the tax, in major part at least, is directly imposed upon the Government's property interests? The fact that the statute does not create a lien "on Government property itself, which could not be sustained in any event, hardly establishes that it is not being taxed. . . ." *United States* v. *Allegheny County, supra,* at 187.

Disregarding form and labels, and looking to substance, it is, I think, crystal clear that this is a transparent direct imposition upon the Government's property interests (as distinguished from the lessee's leasehold estate) in this real estate of the general ad valorem real property tax commonly assessed on, and against the owners of, all real estate in Michigan, but under the guise of a tax upon the lessee for the *privilege* (as construed by the majority)— granted by the Federal Government, not the State—*of using* (though it will be noted, the statute does not in terms tax "use," but, rather, taxes "real property"; see § 1) the Government's property, and, thus, the statute seeks to accomplish by indirection that which the State is constitutionally prohibited from doing directly. Such attempted evasion of the Government's constitutional immunity from state taxation cannot legally be per-

mitted to succeed. As said in *Miller* v. *Milwaukee,* 272 U. S. 713, 715: "If the avowed purpose or self-evident operation of a [state taxing] statute is to follow the bonds of the United States and to make up for [the State's] inability to reach them directly by indirectly achieving the same result, the statute must fail even if but for its purpose or special operation it would be perfectly good." In *Educational Films Corp.* v. *Ward,* 282 U. S. 379, 393, after quoting the above language from the *Miller* case, the Court said: "But, as the Court in that case was careful to point out, in language later quoted with approval in *Macallen Co.* v. *Massachusetts* [279 U. S. 620, 631], 'A tax very well may be upheld as against any casual effect it may have upon the bonds of the United States when passed with a different intent and not aimed at them . . . .' " Here the Michigan statute plainly says that the tax shall "apply to federal property for which payments are [not] made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed" (§ 1), and, hence, it cannot be said that this tax is "casual [in its] effect . . . upon the [property] of the United States"; and it must be said that the tax is plainly "aimed at [it]." *Educational Films Corp.* v. *Ward, supra,* at 393.

The majority rely principally upon *Henneford* v. *Silas Mason Co.,* 300 U. S. 577; *Esso Standard Oil Co.* v. *Evans,* 345 U. S. 495, and, as does also MR. JUSTICE HARLAN in his separate opinion, upon *Curry* v. *United States,* 314 U. S. 14, but, as I read them, those cases do not at all support the Court's conclusion. In *Henneford* this Court merely held that a tax imposed by a State upon its citizen for his use within the State of his own property which he had purchased in another State and imported in interstate commerce was not a prohibited tax on such commerce, which had earlier ended. It did not in any way involve a tax upon government property interests. The *Esso* case

simply upheld a state privilege tax imposed not upon any property interest of the Government but directly upon a storer of gasoline, on a gallonage basis, for his privilege of conducting that business within the State. One of its customers was the Government which had, *by contract,* agreed to reimburse Esso for any tax imposed upon it by the State in consequence of having stored the Government's gasoline. Thus the tax was not imposed by the State upon the Government's property interests but upon Esso which did not share the Government's immunity from state taxation, and the obligation of the Government derived not from the statute but *through operation of the contract.* The *Curry* case merely held that government cost-plus contractors who had imported into the State certain materials which they used in the performance of their contract were not entitled to share the Government's constitutional immunity from a state use tax, and said: "If the state law lays the tax upon them rather than the [Government] with whom they enter into a cost-plus contract like the present one, then it affects the Government . . . only as the economic burden is shifted to it *through operation of the contract.*" 314 U. S., at 18. (Emphasis supplied.) Here the tax is imposed by the Michigan statute directly upon the Government's property interests—including its right to the use of its property—and it is not suffered by any voluntary assumption or "through operation of [a] contract." [1]

In *United States* v. *Allegheny County, supra,* this Court pointed out that "Mesta [a lessee of government chattels] has some legal and beneficial interest in [the

---

[1] It is immaterial to the question here that the lease authorized the lessee to deduct from the rentals any taxes it might be required to pay under this statute during the term of the lease, because the direct thrust of the tax *upon the Government's right of use of its property,* so let to the lessee, arises from the terms of the statute independently of such contractual assumption.

Government's] property. It is a bailee for mutual benefit." [2] The Court then proceeded to say:

"Whether such a right of possession and use in view of all the circumstances could be taxed by appropriate proceedings we do not decide." *Id.,* at 186.

However, the Court did proceed to decide that the Government's property interests in the chattels, distinguished from the bailee's interest therein, could not legally be subjected to any state tax. It said: ". . . the State has made no effort *to segregate Mesta's interest and tax it.* The *full value of the property,* including the whole ownership interest, *as well as whatever value proper appraisal might attribute to the leasehold,* was included in Mesta's assessment. . . . We think, however, that *the Government's property interests are not taxable* either to it or to its bailee." *Id.,* at 187. (Emphasis supplied.)

Here it is undeniable that (1) the Government owned this industrial plant, (2) the only element of economic value in its ownership of the plant is its right *to use it.* That right of use was a government property interest, and any state tax on that right of use is a tax on an instrumentality of the United States and, hence, invalid. See *M'Culloch* v. *Maryland, supra,* and *Allegheny,* at 186–189.

Before the lease, only one estate existed in the plant, namely, the Government's ownership in fee, which included its inherent right to use, and to let the use of, that property. That estate was, and continued to be, a property interest of the Government, to the fruits of which it was and is exclusively entitled; and its right

---

[2] It seems quite certain that a "bailee" of chattels for mutual benefit stands in no different position or relation to the Government than a "lessee," and in fact the Mesta Company held the chattels under a lease in that case.

482

of use, so let to its lessee, in no way derived from any privilege granted—or that could be withheld—by the State, but, rather, derived solely from the United States, and, thus, was not a privilege which the State did or could grant or withhold, nor, hence, regulate or tax; but, on the contrary, it remained immune from state taxation, as pointed out in *Allegheny:*

"A State may tax personal property and might well tax it to one in whose possession it was found, but it could hardly tax one of its citizens because of [property] of the United States which [was] *in his possession as . . . agent, or contractor.* We hold that Government-owned property, *to the full extent of the Government's interest therein, is immune from taxation, either as against the Government itself or as against one who holds it as a bailee."* *Id.,* at 188–189. (Emphasis supplied.)

By the lease, the Government, in exercise of its right to use, and to let the use of, its property, carved from its fee a subservient leasehold estate and vested the same in the lessee. That leasehold estate was private local property of the lessee and, therefore, was subject to state regulation, and, hence, to ad valorem or privilege of use taxation by the State, in such measure as is not unequal, unreasonable or confiscatory—on the basis of the value of the leasehold estate being taxed or used as the measure of the tax.[3]

---

[3] The matter is so stated to point up what should be the obvious necessity, in levying any tax based on or measured by the value of a limited estate in property, of first identifying, and determining the nature and extent of, *the estate or interest* of the taxpayer therein, which, naturally, must be done before any valuation can properly be ascribed thereto, and, hence, before it can be known whether the tax is or is not equal, reasonable, and nonconfiscatory, and, therefore, meets or fails to meet state tests and Fourteenth Amendment Due Process.

Here, however, the statute does not purport to segregate the value of the leasehold estate from the Government's estate in fee, subject to the lease, in this property, but, rather, computes and imposes the tax on *both estates* "as though the lessee or user were the owner of such property." § 1. It, therefore, seems quite plain that the statute imposes the tax on the Government's property interest, which is immune from state taxation, as well as upon the local property of the lessee in its leasehold estate which is not exempt from state taxation, and thus lays a forbidden burden upon instrumentalities of the United States. *M'Culloch* v. *Maryland,* 4 Wheat. 316.

For these reasons, I would reverse the decision and judgment of the Michigan court.