**UNITED STATES of America, Plaintiff,**

v.

**CITY OF MANASSAS, VIRGINIA; Arthur L. Shoemake, Commissioner of Revenue for the City of Manassas, Defendants.**

**and**

**William H. Forst, State Tax Commissioner of the Commonwealth of Virginia Defendant-Intervenor.**

Civ. A. No. 85–0731–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 30, 1986.

Joseph A. Fisher, III, Asst. U.S. Atty., Alexandria, Va., for plaintiff.

James W. Hopper, Washington, D.C., for defendants.

Marion S. Cooper, Asst. Atty. Gen., Richmond, Va., for defendant-intervenor.

## MEMORANDUM OPINION

HILTON, District Judge.

This action was instituted by the United States for the purpose of obtaining (1) a declaratory judgment that Code of Va. § 58–831.2 unconstitutionally discriminates against the United States by permitting taxation of property furnished by the United States to its contractors but not subjecting to tax the use of property furnished by the State to certain contractors or property leased by local transportation districts; (2) preliminary and permanent injunctions preventing the defendants and those acting in concert with them from imposing, assessing or collecting taxes pursuant to Va.Code Ann. § 58–831.2 on property owned by the United States and furnished to its contractors; and (3) for a refund of taxes paid to the City of Manassas from 1981 to 1984 by International Business Machines Corporation ("IBM") pursuant to Va.Code Ann. § 58–831.2.

IBM Federal Systems Division, which is located in the City of Manassas, has a number of contracts with the Department of Defense and administered by the Defense Logistics Agency, including approximately twenty-nine contracts involved in this case which are primarily contracts let by the Navy for advanced signal processing and submarine sonar work. Some of the contracts are for research and development and others are production contracts which involve manufacturing and testing of equipment. IBM receives a fee in addition to reimbursement of its costs for the performance of these contracts. The contract fees are a profit for IBM.

Under the contracts, the United States through the Defense Logistics Agency has

provided Government-owned property to IBM. The provisions of the contracts and federal regulations allow this property to be used only in the performance of Government contracts.

On June 23, 1981, the City of Manassas informed IBM by letter that by Code of Virginia § 58–831.2, IBM was subject to local taxation and that under Virginia law manufacturers are subject to local taxation on machinery and tools used in manufacturing such as the machinery and tools furnished to IBM by the Federal Government for the performance of the contracts at the Manassas facility. At the direction of the Defense Logistics Agency, IBM has paid the City of Manassas under protest the taxes assessed pursuant to Code of Va. § 58–831.2 for the tax years 1981 through 1984. The amounts of the taxes that have been paid are as follows:

| Tax Year | Amount Paid |
| --- | --- |
| 1981 | $ 69,179 |
| 1982 | 71,397 |
| 1983 | 73,318 |
| 1984 | 76,471 |
| Total | $290,364 |

The contracts between IBM and the Department of Defense are cost-plus fee contracts under which taxes such as the taxes imposed pursuant to Code of Va. § 58–831.2 by the defendants are reimbursable costs. IBM has been reimbursed by the United States for the tax payments listed above. The United States is therefore the real party in interest. William H. Forst, State Tax Commissioner of Virginia has been permitted to intervene in this action pursuant to F.R.C.P. 24(b)(2) in order to defend the statute in issue.

The taxes imposed pursuant to Va.Code Ann. § 58–831.2, by the defendant, the City of Manassas, on the use of Government property furnished to IBM were assessed at the original cost of the property less depreciation.

This case is presently before the Court upon the briefs of the parties and a joint stipulation of facts. Based on the stipulation of facts and argument presented at a hearing on December 13, 1985, I find that the material facts are not in dispute and summary judgment is appropriate under F.R.C.P. 56.

The statute under consideration, Code of Va. § 58–831.2, states as follows:

Any person, firm, association, unincorporated company, or corporation engaged in business for profit who or which leases, borrows or otherwise has made available to it any tangible personal property to be used in such business from any agency or political subdivision of the federal, state or local governments shall be liable to local taxation, unless otherwise exempted or partially exempted by state or local laws, to the same extent, in the same manner, and on the same basis as if the lessee were the owner thereof. This section shall not apply to any such property owned by the Virginia Port Authority and leased in connection with the operation of piers and marine terminals and related facilities, or to property owned by any transportation district organized under the Transportation District Act of 1964.

This statute has since been recodified, without amendment of its provisions, at § 58.1–3502.

The Virginia Port Authority is an agency of the Commonwealth of Virginia established by Code of Va. § 62.1–128 *et seq.* Local transportation districts are political subdivisions of the Commonwealth of Virginia created by § 15.1–1342 *et seq.* The parties are in agreement that the City of Manassas is not a member of a local transportation district commission, and that the Virginia Port Authority does not exercise its authority in the City of Manassas in that there are no water terminals, port facilities or other such authority property located within the geographical boundaries of the City of Manassas.

 The defendants contend that because there are no Virginia Port Authority contractors or local transportation district contractors within the boundaries of the City of Manassas, the statute is not uncon-

stitutional because it has not been discriminatorily applied. However, the proper examination of the statute is an examination of its language and its affect in the State and not its application in a particular local jurisdiction. *Phillips Chemical Co. v. Dumas Independent School Dist.*, 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960) requires a determination of how other taxpayers similarly situated are treated and that determination requires an examination of the whole tax structure of the state.

The United States' first argument is that § 58–831.2 is unconstitutional on its face in that it authorizes the imposition of local personal property taxes on property furnished to contractors of the Federal Government but does not apply to property furnished to contractors of the Virginia Port Authority or local transportation districts.

█ A state tax may not discriminate against the Federal Government or those with whom it deals. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). In *Phillips Chemical Co., supra,* the Supreme Court ruled on a Texas statute which authorized the taxation of the full value of property leased by a Federal Government contractor, but not contractors with similar leases, using tax exempt property owned by the state and its political subdivisions. The court held that while a statute is seemingly discriminatory against the United States, the inquiry must go further to determine whether the statute is discriminatory in its application or the discrimination can be justified. The State of Texas argued that the state could collect in rent what it loses in taxes from its own lessees and could not from the United States government. It also argued that the state may legitimately foster its own interests by adopting measures which facilitate the leasing of its property, and that federal leasing of exempt land has a more serious impact on the finances and operations of local government than do the states own leasing activities. The court held that none of these arguments were adequate to justify what appears to be so

substantial and transparent a discrimination against the government.

█ As seen in *Phillips*, although a statute is seemingly discriminatory on its face, it will not be unconstitutional if the discrimination is justified. Likewise, the economic burden on a federal function of a state tax imposed on those who deal with the Federal Government does not render the tax unconstitutional so long as the tax is imposed equally on the other similarly situated constituents of the state. *United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977). In *Washington v. United States*, 460 U.S. 536, 103 S.Ct. 1344, 75 L.Ed.2d 264 (1983) the Supreme Court affirmed its holding in *Phillips* in rejecting the argument that a tax is invalid simply because it treats those who deal with the Federal Government differently than it treats others, and again stated that the determination whether a tax is discriminatory requires an examination of the whole tax structure of the state.

In the present case, § 58–831.2 of the Code of Virginia carves out two classes of exempt property: the Virginia Port Authority and local transportation districts. Both areas are of vital concern to the Federal Government as well as the state. With the exception of intrastate commerce, the Federal Government has jurisdiction over and regulates virtually every aspect of shipping. The Virginia Port Authority was established by the General Assembly to foster and stimulate the commerce of the ports of the Commonwealth (*See* Joint Stipulation No. 16). Among other things, the Authority is granted police powers regarding matters affecting the safety and security of Authority property. Code of Va. § 62.1–132.11. And the Authority is specifically empowered to cooperate with the United States and its instrumentalities in the maintenance, development, improvement and use of harbors and seaports of the Commonwealth § 62.1–132.13.

Similarly, the federal government indicated its concern and involvement in mass transportation by the enactment of the Urban Mass Transportation Act, 49 U.S.C.

§ 1601 *et seq.*, which declares Congressional policies designed:

(1) to assist in the development of improved mass transportation ... (2) to encourage the planning and establishment of area wide urban mass transportation systems ... and (3) to provide assistance to State and local governments and their instrumentalities in financing such systems ... 49 U.S.C. § 1601(b)

Likewise, the General Assembly's purpose in establishing local transportation districts was to promote the orderly growth and development of the urban areas of the Commonwealth for the safety of its citizens and for the economic utilization of public funds (Joint Stipulation No. 20). The exemption of transportation district property further promotes both the Federal and State purposes by removing the additional expense accompanying the acquisition of equipment necessary to facilitate the above mentioned objectives.

It becomes apparent that the federal government has concerns and involvement which are similar to and furthered by the exemption of the Virginia Port Authority and local transportation districts and that federal tax monies in both areas are spared because of the exemptions.

A similar case was presented in *Chrysler Corporation v. Township of Sterling,* 410 F.2d 62 (6th Cir.1969) where a Michigan use tax was attacked. The statute, referred to as Act 189, provided as follows:

When any real property which for any reason is exempt from taxation is leased, loaned or otherwise made available to and used by a private individual, association or corporation in connection with a business conducted for profit, except where the use is by way of a concession in or relative to the use of a public airport, park market, fairground or similar property which is available to the use of the general public, shall be subject to taxation in the same amount and to the same extent as though the lessee or user was the owner of such property. Provided, however, That the foregoing shall not apply to federal property for which payments are made in lieu of taxes in amounts equivalent to taxes which might otherwise be lawfully assessed or property of any state-supported educational institution.

The *Chrysler* case arose out of the assessment by the Township of Sterling of an annual tax on Chrysler's use and occupancy of a U.S. Government-owned plant. Chrysler occupied and used part of the plant for the manufacture of weapons for the Department of the Army.

The Sixth Circuit examined, *inter alia,* the stautory exemption for property of state-supported educational institutions and found it to be "reasonable and valid because it is founded upon the well recognized policy of both the United States and the State of Michigan to protect, promote and support education, including colleges and universities. The involvement of the United States along with the States with direct financing of institutions of higher learning completely dispels the contention that the exemption of Michigan state-supported universities and colleges under Act 189 constitutes an unjustifiable discrimination against the United States and its lessees." 410 F.2d at 70.

Likewise, the United States benefits as well as the State from the promotion and support of Virginia Port Authority and transportation districts. Many federal dollars are spent in both areas and the exemption under the Virginia statute should provide some financial benefits to the United States. Other than two narrow exceptions, which benefit both the Federal and State governments, both Federal and State government contractors are treated the same. That is, property of either government in the hands of a contractor is taxed at the same rate.

■ Accordingly, the exemptions contained in § 58–831.2 for the Virginia Port Authority and local transportation districts do not discriminate against the United States but creates justified exemptions which benefit both the State and Federal Governments.

The other Constitutional attack on § 58–831.2 by the United States is that the statute fails to tax the interest of the contractor in the government property and thus is in reality a tax on the United States. In particular, in imposing the tax authorized, the City of Manassas assessed IBM's machinery and tools at their original cots, less depreciation. As the United States is the owner of the property, assessing the full value of the property to IBM, which does not have a full ownership interest, it is argued, necessarily results in the taxation of a portion of the interest of the United States in the property. Taxation of the property of the United States is unconstitutional.

§ 58–831.2 states in pertinent part that government contractors:

shall be liable to local taxation ... to the same extent, in the same manner, and on the same basis as if the lessee were the owner thereof.

Code of Va. § 58–831 requires that machinery and tools segregated for local taxation "shall be valued by means of depreciated cost ..."

The U.S. Supreme Court has already ruled however, that a use tax, as opposed to a property tax, may be based on the full value of the property used. In *United States v. Boyd*, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964) a use tax was imposed upon profit-making contractors of the United States and measured by the purchase price or fair market value of the property so used, whichever was greater. The Court upheld the Constitutionality of this tax, even though it was measured by the value of the government-owned property.

 Similarly, in *United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958), a Michigan statute made the lessees of government property "subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property...." p. 468, n. 1, 78 S.Ct. at 475, n. 1. Alike its argument in the instant case, the United States argued in *Detroit* that be-cause the tax was measured by the value of the property, it should be treated as a tax on the property. The Supreme Court was not persuaded and stated:

A tax for the beneficial use of property, as distinguished from a tax on the property itself, has long been a commonplace in this country. (citations omitted.) In measuring such a use tax it seems neither irregular nor extravagant to resort to the value of the property used.... In our judgment it was not an impermissible subterfuge but a permissible exercise of its taxing power for Michigan to compute its tax by the value of the property used. *Detroit* at 470, 78 S.Ct. at 476.

Like the Michigan tax in *Detroit*, the tax in issue here is imposed upon IBM's use of the government-owned machinery and tools; not upon the property itself. The measurement of such tax by its original cost less depreciation is, therefore, a fair and permissible method of valuation.

Accordingly, an appropriate order will enter denying plaintiff's requested relief and entering judgment for the defendants.