**UNITED STATES of America**

v.

**HAWKINS COUNTY, TENNESSEE, Dan Brooks, Hawkins County Executive, Jerry Stewart, Hawkins County Trustee, Grady Marshall, Hawkins County Property Assessor and 21 members of the Hawkins County Commission,**

**State of Tennessee (Intervening Defendant).**

**No. CIV–2–86–201.**

United States District Court, E.D. Tennessee, Northeastern Division.

April 10, 1987.

J. Edgar Schmutzer, Asst. U.S. Atty., Greeneville, Tenn., John J. McCarthy, Richard Correa, Washington, D.C., for plaintiff.

George John Keto, Washington, D.C., and James O. Phillips, III, Phillips & Hale, Rogersville, Tenn., for all defendants except intervening defendant.

W.J. Michael Cody, Atty. Gen., State of Tenn., Nashville, Tenn., for intervening defendant.

**MEMORANDUM AND ORDER**

HULL, Chief Judge.

This action for declaratory and injunctive relief came before the Court for a hearing on March 26, 1987, following the parties' filing of cross-motions for summary judg-

ment. Plaintiff, the United States of America, seeks a declaratory ruling that Tennessee Code Annotated § 67–5–203(c) is unconstitutional and a permanent injunction to preclude defendants from assessing a "use" tax, pursuant to § 67–5–203(c), upon Holston Defense Corporation, a private federal contractor. Defendants deny that § 67–5–203(c) is unconstitutional and deny that the use tax levied against Holston Defense Corporation violates the Supremacy Clause. Nevertheless, after careful consideration of the facts, legal precedent, and the record as a whole, the Court finds that T.C.A. § 67–5–203(c), as applied to Holston Valley Defense, does violate the Supremacy Clause of the United States Constitution for the reasons stated below.

The contested statute, Tennessee Code Annotated § 67–5–203, as amended by subsection (c), states as follows:

67–5–203 Government property.—(a)(i) All property of the United States, all property of the State of Tennessee, of any county, or of any incorporated town, city, or taxing district in the state that is used exclusively for public, county, or municipal purposes shall be exempt from taxation.

. . . .

(c) All property of the United States or any department or agency thereof, leased or otherwise used for other than an exclusively public purpose by any person, not an agent or instrumentality of the United States, shall be assessed to such user of such property at its value as determined pursuant to § 66–5–601, subject only to a deduction for any restricted use. This subsection shall not affect sales and use taxes imposed on users of federal property by § 67–6–209.

Relying upon § 67–5–203(c), the property assessor for Hawkins County, Tennessee assessed a "use" tax of $8,125,239.32 against Holston Defense Corporation (Holston) for 1986. The tax was levied on the value of Holston's use of federal property at the Holston Army Ammunition Plant, which is owned by the United States and consists of 6,024 acres of land located in Hawkins and Sullivan Counties, Tennessee. The United States, which has maintained facilities for the production of explosives at the site since World War II, contracts with Holston to operate and manage its munitions plant pursuant to Government Contract No. DAAA09–83–C–4515. The government pays Holston an annual fixed fee and reimburses Holston for its costs of operation.

Nevertheless, the government maintains exclusive control of the plant. For example, the contract specifies that Holston must produce munitions exclusively for the United States, which assumes immediate title to the products without purchasing them; that Holston may not perform work on behalf of itself or any other private entity; and that Holston's right of access to the plant is limited to performing its contractual duties. Holston does not hold title, leasehold, or license to any government property.

Furthermore, while Holston has great expertise in producing munitions, Holston's efforts are subject to strict governmental control and supervision. For example, in accordance with its contract, Holston follows production schedules and stringent safety regulations promulgated by the United States Army. In addition, Holston must produce the explosives according to processes developed by the Army.

After analyzing this contract and the relationship between Holston and the government in 1985, this Court found that Holston owned no property interest in the plant and enjoined Hawkins County from assessing an *ad valorem* real property tax against Holston. *United States v. Hawkins County, Tennessee,* —— F.Supp. —— (Civil Action No. 2–84–35, April 5, 1985), *aff'd,* 812 F.2d 1409 (6th Cir.1987). Subsequently, however, Tennessee enacted T.C.A. § 67–5–203(c).

Defendant Hawkins County and intervenor defendant, the State of Tennessee, argue that local authorities may tax a private corporation for its use of federal property in its commercial activities without offending the Supremacy Clause of the United States Constitution. Additionally,

they argue that Hawkins County properly assessed a use tax against Holston pursuant to T.C.A. § 67–5–203(c) and that the use tax and its application to Holston should be upheld.

In *McCulloch v. Maryland,* 17 U.S. (4 Wheat) 316, 431, 4 L.Ed. 579 (1819), Chief Justice Marshall first declared that the federal government and its property are immune from state taxation. "In so doing he introduced the Court to what has become a 'much litigated and often confusing field'; one that has been marked from the beginning by inconsistent decisions and excessively delicate distinctions." *United States v. New Mexico,* 455 U.S. 720, 730, 102 S.Ct. 1373, 1380, 71 L.Ed.2d 580 (1982), *quoting, United States v. City of Detroit,* 355 U.S. 466, 473, 78 S.Ct. 474, 478, 2 L.Ed.2d 424 (1958).

Determining when a state might constitutionally tax contractors that provide services to the federal government, as the Court must do in this case, has been particularly troublesome. In *Jones v. Dravo Contracting Co.,* 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937), for example, the Supreme Court upheld a state tax on the gross receipts of a federal contractor; and in *Alabama v. King & Boozer,* 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3 (1941), the Court held that the state might impose a tax on sales to federal contractors. In *United States v. Boyd,* 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964), the Court upheld a use tax upon purchases made by the contractor on behalf of the United States; and in *United States v. City of Detroit,* 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958), the Court stated that a use tax upon the lessee of a portion of a federal industrial plant was not repugnant to the Constitution. Similarly, the Court held, in *United States v. Township of Muskegon,* 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958), that a state may tax the use of federal property where a contractor made and sold goods to the United States for a profit.

More recently, the Court sanctioned New Mexico's imposition of a gross receipts tax and a compensating use tax on federal contractors who purchased tangible property for the federal government under an advanced funding procedure. *United States v. New Mexico, supra.* Similarly, the Court approved Washington's sales tax on materials sold to federal contractors in *Washington v. United States,* 460 U.S. 536, 103 S.Ct. 1344, 75 L.Ed.2d 264 (1983).

Nevertheless, the Court struck down state taxes in *United States v. Allegheny County,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944) (where the state sought to tax the value of federal machinery held by a private property); in *Livingston v. United States* 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960) (where the Court summarily affirmed the invalidation of a state use tax imposed against a federal contractor); and in *Jefferson County v. United States,* 450 U.S. 901, 101 S.Ct. 1335, 67 L.Ed.2d 325 (1981) (where the Court summarily affirmed the tenth circuit's holding (*United States v. State of Colorado,* 627 F.2d 217 (1980)) that a state may not impose a use tax on a private company acting under a management contract with the United States).

While these cases appear to conflict in many particulars, in each case a single consideration was paramount: the closeness of the interrelationship between the contractor and the United States Government. For example, *New Mexico, supra.,* offers the following standard for measuring the appropriateness of taxing federal contractors:

[T]ax immunity is appropriate in only one circumstance: when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned.

455 U.S., at 735, 102 S.Ct., at 1383.

Two cases, *United States v. Township of Muskegon, supra.,* principally relied upon by the defendants, and *United States v. Colorado, supra.,* cited by the plaintiff, demonstrate the courts' application of this standard and serve as a point of distinction in resolving this case. In fact, the pertinent facts in *Colorado* are virtually identi-

cal to those in this case, while those in *Colorado* and the other cases relied upon by the defendants, although similar, are distinguishable in one critical area—the closeness of the interrelationship between the government and the contractor.

In *Colorado,* for example, as in this case, the state attempted to assess a use tax against a federal contractor producing weapons for national defense. The state authorized county governments to levy a tax against corporations which "leased, loaned, or ... used" federal property "in connection with a business conducted for profit." Colo.Rev.Stat. § 39–3–112 (Supp. 1979). Rockwell, the federal contractor in *Colorado,* like Holston in the instant case, had a management contract with the United States to perform services on government property, which the United States owned in fee simple. Rockwell, like Holston, did not have a lease, permit, or license to the property; and its "use" of the property was strictly delineated by the management contract. As with Holston, the government paid Rockwell a fixed fee and reimbursed it for its costs. Like Holston, also, Rockwell provided services only and did not sell products to the United States or to any other party for a profit.

"[T]he key to the present problem," the *Colorado* court stated, "is the relationship between Rockwell and the United States and the nature of the activity which the State of Colorado seeks to tax." 627 F.2d., at 219. After analyzing the relationship between Rockwell and the government in light of the forementioned facts, the tenth circuit held, and the Supreme Court affirmed, that Colorado's taxing of Rockwell for its "use" of government property was "in reality a tax on the property itself and, as such, barred under the doctrine of implied immunity first found in *McCulloch v. Maryland....*" 627 F.2d, at 219.

In *Muskegon,* on the other hand, the government permitted Continental Motors Corporation to use government facilities to manufacture Continental's goods, then sell them to the government. Pursuant to state law, the township levied a tax against Continental because of its use of tax-ex-empt property in its private business. Although the United States protested that the tax was invalid, the Supreme Court upheld the tax, explaining:

> The vital thing ... is that Continental was using the property in connection with its own commercial activities.... [T]he fact that Continental was carrying out a contract with the Government does not materially alter the case. Continental was still acting as a *private enterprise selling goods to the United States.* In a certain loose way it might be called an "instrumentality" of the United States, but no more so than any other private party supplying goods for his own gain to the Government.

355 U.S., at 486–87, 78 S.Ct., at 485 (emphasis supplied).

Admittedly, the circumstances of *Muskegon* closely resemble those in *Colorado* and this case. Nevertheless, *Muskegon* is distinguishable, as demonstrated by the Supreme Court's decision to summarily affirm *Colorado* thirteen years after *Muskegon.* In *Muskegon,* for example, the Court emphasizes Continental's independence from government control, its "acting as a private enterprise selling goods to the United States." By contrast, Holston (like Rockwell) is much more closely interrelated to the government, as evidenced by the degree of control the government exerts over it. For example, Holston does not sell goods to the United States or to any other party. The goods already belong to the government. Holston merely manages and oversees the government's own production of goods. In other words, while Holston is an independent entity, it is not using government property to produce goods for sale in its own commercial activities. Manufacturing munitions at the Holston Army Ammunition Plant is a governmental activity which Holston manages.

The *Muskegon* Court also emphasizes Continental's freedom in using government property:

> [H]ere Continental was not so assimilated by the Government as to become one of its constituent parts. It was free within broad limits to use the property as

it thought advantageous and convenient in performing its contracts and maximizing its profits from them.

355 U.S., at 486, 78 S.Ct., at 485. In fact, while a formal lease may not have existed, the Court notes that Continental essentially paid rent by reducing the price of the goods it sold to the government. *Id.*, at 485, 78 S.Ct., at 485.

Holston, on the other hand, must use the property according to strict government direction. It must follow government manufacturing methods and production timetables, as well as government safety and environmental regulations. It has no lease, formal or informal, and, of course, cannot use the property to maximize profits. Therefore, the Court finds that *Colorado*, not *Muskegon* controls this action.

Other cases relied upon by the defendants can be readily distinguished. For example, in *United States v. City of Detroit*, *supra.*, the federal contractor leased property from the United States and sold its goods to private companies, as well as to the government. Furthermore, while "use" taxes were levied in *United States v. Boyd, supra.; United States v. New Mexico, supra.;* and *Washington v. United States, supra.;* in each instance, the use taxes were merely enforcement mechanisms for gross receipt or sales taxes.

Accordingly, after analyzing the circumstances of this case in light of *Colorado*, *Musekgon*, and the other cases cited by the parties, it appears to the Court that Holston, like Rockwell, is so closely interrelated with the government that the "use" tax on Holston is, in reality, a tax on the underlying government property.

Therefore, the Court finds that defendants' levying of a tax on Holston's use of federal property at the Holston Army Ammunition Plant is an impermissible tax on the property itself, and, as such, is barred by the Supremacy Clause of the United States Constitution. Accordingly, it is hereby ORDERED that defendants are hereby permanently ENJOINED from imposing a use tax under T.C.A. § 67-5-203(c) against the Holston Defense Corporation for its use of government property at the Holston Army Ammunition Plant.