UNITED STATES of America, Plaintiff,

v.

REAL PROPERTY KNOWN AS 9901 GLADIOLUS DRIVE, FORT MYERS, LEE COUNTY, FLORIDA 33908 Together With all Improvements and Appurtenances Thereto, etc., Defendant.

No. 92–215–Civ–FtM–17.

United States District Court, M.D. Florida, Fort Myers Division.

Nov. 12, 1993.

Robert P. Barclift, U.S. Atty's. Office, Ft. Myers, FL, for plaintiff.

John Ochs Terry, Terry & Terry, J. Jeffrey Rice, Goldberg, Goldstein & Buckley, Ft. Myers, FL, for defendants and claimants.

### ORDER GRANTING PLAINTIFF SUMMARY JUDGMENT AND ORDER OF FORFEITURE

KOVACHEVICH, District Judge.

This cause is before the Court on Plaintiff's, United States of America, motion for summary judgment and request for order of forfeiture and memorandum of law in support, filed May 18, 1993 (Docket No. 14), and responses thereto, by Stanley K. Ink, Trustee, filed May 24, 1993 (Docket No. 15) and by Tax Collector of Lee County, Florida, Bill Fussell, filed May 29, 1993 (Docket No 16).

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

The Court also said, "Rule 56(3) therefore requires the nonmoving party to go beyond the pleadings and by his/her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Celotex*, at p. 324, 106 S.Ct. at 2553.

### I

The first issue to be addressed concerns the order of forfeiture. Plaintiff has presented the following allegations of fact in support of forfeiture, in his complaint, the affidavit of Special Agent Joseph Schuetz, and the motion now before the Court:

The record owner of the defendant real property is Jairo Duran, Trustee, whom

Plaintiff has made diligent efforts to serve with process by mail and by publication, all to no avail. Lee County real estate records reflect that the defendant real property was transferred to Jairo Duran by Stanley Ink, Trustee on December 1, 1988.

Jairo Duran has been indicted by Spanish authorities for narcotics trafficking and is associated with a group of Colombian narcotics smugglers who have operated on an international level since 1980. The United States Customs Service, Office of Enforcement, San Juan Puerto Rico has identified Jairo Duran as a suspect in the smuggling activities of the "Rosa Collazo" and "Manolo Forty" drug smuggling organizations. Jairo Duran has been identified as an associate and pilot of a Peruvian narcotics trafficking organization. Jairo Duran uses the alias Hugo Paez. On June 18, 1982, Jairo Duran, AKA, Hugo Paez, Jairo Muvdi, and another were indicted by a Federal Grand Jury sitting in the Fort Myers Division of the Middle District of Florida, for Conspiracy to Launder Monetary Instruments in Case No. 91–121–Cr–FtM–15. Jairo Duran is a fugitive from justice in that case.

Jairo Duran was identified by a confidential informant as being present at a February 24, 1992 meeting of drug cartel members in Barranquilla, Colombia. Jairo Duran was identified by the confidential informant as having presented a real estate flyer to those in attendance, bearing the name of Jairo Muvdi with a business number for Jairo Muvdi and the Property Place Realty located in Cape Coral, Florida for which Jairo Muvdi was a broker. According to the confidential informant, Jairo Duran was soliciting those present at the meeting to invest in real estate in the Lee County, Florida area. Jairo Duran represented to the drug cartel members that Jairo Muvdi hid large amounts of cash through the purchase of real estate in the Lee County, Florida area.

Jairo Muvdi brokered the purchase of real estate for Jairo Duran under the name of Hugo Paez, and has established bank accounts in the name of Hugo Paez for the purpose of laundering the proceeds of Duran's narcotics trafficking. Jairo Muvdi facilitated the purchase of another tract of real estate located in Lee County, Florida, causing title in that property to be placed in the name of Hugo Paez, Trustee. In that transaction Jairo Muvdi arranged for the purchase of the real estate, acted as agent for Jairo Duran, and assisted in laundering Duran's currency through the use of fictitious bank accounts and structured currency transactions.

On October 27, 1988, Jairo Muvdi as Trustee, agreed to purchase the defendant real property from Stanley Ink, Trustee, who would hold a purchase money mortgage on the property. Fort Myers Attorney Morton A. Goldberg was retained by Jairo Muvdi to handle the real estate closing. Jairo Muvdi advised Goldberg that the defendant real property was to be titled in the name of Jairo Duran, Trustee. A deed conveying the property from Stanley Ink to Jairo Duran, Trustee, was executed December 1, 1988, and recorded December 13, 1988. A down payment was paid to Attorney Goldberg's Trust Account by Jairo Muvdi from funds previously deposited into the escrow account of The Property Place, a real estate company with which Muvdi associated.

From December 15, 1989, through August 5, 1991, mortgage payments were made to Stanley Ink from funds deposited into bank accounts in the name of "Hugo Paez" which were opened and controlled by Jairo Muvdi.

 Plaintiff, United States of America, filed its complaint for forfeiture of real property located in Lee County, Florida, on July 24, 1992. The government seeks forfeiture of the defendant real property from December 1, 1988, pursuant to 18 U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. § 1956, as proceeds traceable to money laundering, and 21 U.S.C. § 881(a)(6) in that defendant real property was allegedly involved in and/or is traceable to financial transactions designed to conceal the proceeds of illegal international drug activity, pursuant to 21 U.S.C. § 881(a)(6). In a proceeding which seeks the forfeiture of property under the aforementioned statutes, the government has the initial burden of demonstrating the existence of probable cause for belief that a substantial connection exists between the property to be forfeited and illegal drug or

money laundering transactions. *United States v. Four Million, Two Hundred Fifty-five Thousand*, 762 F.2d 895, 905 (11th Cir. 1985); *United States v. All Monies*, 754 F.Supp. 1467 (D. Hawaii 1991). The government need not trace the cash to specific transactions, or actually prove by a preponderance of evidence a substantial connection to drug dealing. *United States v. $41,305.00 In Currency*, 802 F.2d 1339, 1343 (11th Cir. 1986). Once the government demonstrates probable cause, the burden of proof shifts to the claimant to establish by a preponderance of the evidence that the money was not connected to a violation of the statute. *United States v. Four Million, Two Hundred Fifty Thousand*, 762 F.2d 895, 905 (11th Cir.1985), or that he is an "innocent owner" who did not have actual knowledge of the connection between the money and drug transactions, *Id.*, at 906. The claimant must show by a preponderance of the evidence an alternative source for the funds, *United States v. $41,-305.00 In Currency* at 1345.

This Court finds that the complaint and the motion now before the Court, as well as the affidavit prepared by Special Agent Schuetz, clearly and sufficiently demonstrate the existence of probable cause for belief that a substantial connection exists between the defendant property to be forfeited and illegal drug or money laundering transactions. The facts presented also indicate that Jairo Duran, the individual whose name appears on the title to defendant property, has failed to come forward to show otherwise, despite diligent efforts at serving him with process. Additionally, claimant Tax Collector of Lee County, Florida, does not disagree that Plaintiff is entitled to forfeiture of defendant property. Hence, there being no dispute as to the issue of forfeiture, this Court finds no reason why Plaintiff should not be granted summary judgment and have entered an order of forfeiture on this issue.

■ The remaining issue raised in Plaintiff's motion and Tax Collector's response thereto, is whether Tax Collector of Lee County, Florida can assess the United States for *ad valorem* taxes on the defendant real property. The facts relevant to this issue, as presented by both Plaintiff and Tax Collector, are as follows:

Lee County Tax Collector, Bill Fussell, has filed a claim for unpaid *ad valorem* taxes for 1989 through 1993 and all tax accruing until paid, the tax having become a lien on the property on January 1, 1993. A claim was made by the Stanley Ink Trust in this case on or about for its interest in the property pursuant to its note and mortgage on the defendant property. A stipulation was entered into on August 28, 1992, whereby the United States recognizes the Trust, a mortgage-holder, as an "innocent owner" for purposes of forfeiture and agrees to pay that to which it is entitled by law in the event the United States is successful in obtaining an order of forfeiture.

The Tax Collector contends, by way of his original claim and his response to Plaintiff's motion for summary judgment, that he is entitled to entry of a judgment that the claim for *ad valorem* real property taxes, for which he has filed a claim herein, as first priority liens on the Defendant, real property. As such, he requests that upon sale of such property, he be paid prior to any other claimant or party, including Plaintiff, all outstanding *ad valorem* real property taxes, interest thereon, his costs herein expended, including a reasonable attorney's fees, and all other sums to which he is entitled, and that any unpaid, current or future taxes remain as first priority liens on such property. In support of this motion, Mr. Fussell makes arguments of court interference with state sovereignty, in addition to contending that the lien for unpaid *ad valorem* taxes on the property is protected from forfeiture by the "innocent owner" exception of 21 U.S.C. § 881(a)(6) as explained in *United States v. Parcel of Land, Buildings, Appurtenances, and Improvements, Known as 92 Buena Vista Avenue, Rumson, New Jersey*, — U.S. —, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). He further asserts that the doctrine of intergovernmental immunity would not apply to Plaintiff in this instance because the forfeited property will be resold and not used for governmental purposes.

It is clear that property owned by the United States is immune from taxation by

state and local authorities in the absence of express congressional authorization. This doctrine was first expressed by the United States Supreme Court in *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). Since *M'Culloch,* the Supreme Court has consistently ruled that congressional consent to such local taxation must by clear, express and affirmative. *United States v. Allegheny County,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944); *United States v. City of Detroit,* 355 U.S. 466, 469, 78 S.Ct. 474, 476, 2 L.Ed.2d 424 (1958). It is true that Congress has, on occasion, enacted statutes specifically waiving the sovereign's immunity from local real estate taxation of property held by federal entities, however, this Court has found no legal authority to indicate that Congress waived such immunity when drafting the federal forfeiture statutes.

■ This Court finds that properties forfeited to the United States are owned by the United States as of the date of the activity which renders the property forfeitable, pursuant to the "Relation Back Doctrine" articulated in *United States v. Stowell,* 133 U.S. 1, 16–17, 10 S.Ct. 244, 247–248, 33 L.Ed. 555 (1890) and codified at 18 U.S.C. § 981(f) and 21 U.S.C. § 881(h), and such properties are not subject to state and local taxes arising after the date of the illegal activity, or in the case of properties acquired with proceeds of illegal activity, after the date such properties are acquired. Under the "Relation Back Doctrine," title to forfeited property vests with the United States on the date of the offense giving rise to the forfeiture, although title is not perfected until an order of forfeiture is entered. Therefore, this Court must disagree with Mr. Fussell's contention that by denying the state tax liens on property forfeited to the United States, the courts unconstitutionally interfere with state sovereignty. Although state sovereignty enables states to tax their residents, state and local governments have never been permitted to levy taxes, the incidence of which falls on the United States. Thus, the "Relation Back" Doctrine, does not erode the state's sovereign powers. Under the Doctrine, Lee County's tax liens never attached to the property being forfeited, since the property belonged to the United States as of the date

of the first offense giving rise to forfeiture, December 1, 1988.

■ Additionally, Mr. Fussell argues that he, as tax collector, is entitled to payment of the *ad valorem* real property taxes by the United States in this case because he falls under the "innocent owner" exception of 21 U.S.C. § 881(a)(6). He relies primarily on the Supreme Court's decision in *Buena Vista* as support for his position, but this Court concurs with Plaintiff that *Buena Vista* does not alter the fundamental principal that local taxes cannot be assessed against property in which the United States maintains a title and/or possessory interest.

■ The Supreme Court, in *Buena Vista,* sought to clarify the application of the "Relation Back" Doctrine by holding that a purported "innocent owner's" claim must be considered before giving effect to the Doctrine. The Supreme Court ruled that the term "owner," as it is used in 21 U.S.C. § 881(a)(6), is not limited to persons with an interest in property obtained prior to the illegal activity giving rise to forfeiture or persons who were bona fide purchasers without knowledge of the illegal activity which renders the property forfeitable. The term "innocent owner" applies to any "owner" who can establish either lack of knowledge about the illegal source of the proceeds or lack of consent to the illegal act. This Court agrees with Plaintiff that *Buena Vista* does not support the Tax Collector's position, that he is entitled to payment of the taxes, because he is not an "owner" of the property, but rather, the "holder" of a *lien* for taxes. Accordingly, this Court finds that the Tax Collector has not successfully challenged the legal conclusion that the government was the title holder of the defendant property at the time the asserted tax lien arose.

■ Finally, the Tax Collector asserts that he should be allowed to assess the *ad valorem* taxes against the United States because the defendant property will be acquired by Plaintiff "not for any governmental purpose but solely for the purpose of resale to a private entity." This Court agrees with Plaintiff that this is a bold assumption and

that while such may be true, this certainly cannot be taken as fact in deciding the issue presented by the subject motions. Accordingly, it is

**ORDERED** that:

(1) Plaintiff's motion for summary judgment be **granted** and the defendant real property hereby be **forfeited** to the United States of America for disposition pursuant to the law. Forfeiture of the defendant real property is subject, however, to the mortgage of the Stanley K. Ink Trust, which is subordinate only to the costs and expenses of the United States Marshals Service associated with this forfeiture and,

(2) The claim of Tax Collector for property taxes due on the property subsequent to December 1, 1988, the date title in the subject property vested in the United States pursuant to 21 U.S.C. § 881(h), be **denied.** Property taxes which accrued on the property prior to December 1, 1988, if any, shall be paid to the Lee County Tax Collector from the proceeds of sale by the United States Marshals Service, and,

(3) The Clerk of the Court **shall** enter judgment of forfeiture in favor of Plaintiff and in conformance with this order.

**DONE AND ORDERED**