**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MUNICIPAL ASSOCIATION OF SOUTH
CAROLINA,

*Plaintiff-Appellee,*

v.

USAA GENERAL INDEMNITY
COMPANY,

*Defendant-Appellant.*

No. 11-2220

MUNICIPAL ASSOCIATION OF SOUTH
CAROLINA,

*Plaintiff-Appellee,*

v.

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, INC.,

*Defendant-Appellant.*

No. 11-2221

MUNICIPAL ASSOCIATION OF SOUTH
CAROLINA,

*Plaintiff-Appellee,*

v.

HARTFORD FIRE INSURANCE
COMPANY,

*Defendant-Appellant.*

No. 11-2222

MUNICIPAL ASSOCIATION OF SOUTH
CAROLINA,

*Plaintiff-Appellee,*

v.

SERVICE INSURANCE COMPANY, INC.,

*Defendant-Appellant.*

No. 11-2223

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Margaret B. Seymour, District Judge.
(3:08-cv-03073-MBS; 3:08-cv-03879-MBS;
3:08-cv-03611-MBS; 3:08-cv-03072-MBS)

Argued: January 31, 2013

Decided: March 1, 2013

Before NIEMEYER, GREGORY, and DAVIS,
Circuit Judges.

Reversed by published opinion. Judge Gregory wrote the opinion, in which Judge Niemeyer and Judge Davis joined.

---

## COUNSEL

**ARGUED:** Robert H. Jordan, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Charleston, South Carolina; Molly Hughes Cherry, NEXSEN PRUET, LLC, Charleston, South Carolina, for Appellants. Robert E. Tyson, Jr., SOWELL, GRAY, STEPP & LAFFITTE, LLC, Columbia, South Carolina, for Appellee. **ON BRIEF:** John C. von Lehe, Jr., Merritt G. Abney, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Charleston, South Carolina, for Appellants USAA General Indemnity Company and Nationwide Mutual Fire Insurance Company, Inc.; Bradish J. Waring, NEXSEN PRUET, LLC, Charleston, South Carolina, for Appellants Hartford Fire Insurance Company and Service Insurance Company, Inc. Robert E. Stepp, Bess J. DuRant, SOWELL, GRAY, STEPP & LAFFITTE, LLC, Columbia, South Carolina; Leroy F. Laney, Damon C. Wlodarczyk, RILEY POPE & LANEY, LLC, Columbia, South Carolina, for Appellee.

---

## OPINION

GREGORY, Circuit Judge:

The Municipal Association of South Carolina ("MASC") filed an action in the district court seeking a declaration that South Carolina municipalities are entitled to assess municipal business license taxes based on, or measured by, the total flood insurance premiums collected in the particular municipality by insurance companies under an arrangement with the Federal Emergency Management Agency ("FEMA"). The insurance companies moved for summary judgment on grounds of preemption and sovereign immunity, but the dis-

trict court denied the motions. Because we find that the taxes imposed by the South Carolina municipalities contravene the principles of sovereign immunity, we reverse the decision of the district court.

I.

A. *The Parties*

MASC is a non-profit organization and its membership consists of almost all the municipalities in the State of South Carolina. On behalf of 262 of its 270 member-municipalities, MASC administers the Insurance Tax Collection Program ("ITCP") through which it imposes and collects business license taxes from insurance companies that conduct business within the participating municipalities. With one exception, the tax amount for each insurance company is two percent of the gross premiums received by the insurance company in the prior calendar year in a particular municipality.[1]

The four Appellants in this consolidated appeal are Hartford Fire Insurance Company ("Hartford"), Nationwide Mutual Fire Insurance, Service Insurance Company, Inc., and USAA General Indemnity Company. Appellants are insurance companies that write and sell insurance policies in South Carolina. Of particular relevance to this appeal, under an arrangement with FEMA, Appellants offer and collect premiums on Standard Flood Insurance Policies ("SFIPs") pursuant to the National Flood Insurance Program (the "NFIP").

B. *The NFIP's Purpose and Framework*

The NFIP was created by the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4129, ("NFIA"), in part to make "federally subsidized flood insurance available in flood-prone

---

[1]The tax rate for the City of Greenville is 2.75 percent of gross premiums collected within its boundaries.

areas," *Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d 239, 243 (4th Cir. 2007), and reduce the burden on the nation for unforeseen disaster relief, 42 U.S.C. § 4001(a)-(e). Prior to its enactment, flood insurance was generally unavailable from private insurance companies as those companies were unwilling to underwrite and bear flood risks due to the catastrophic nature of floods. 42 U.S.C. § 4001(b); H.R. Rep. No. 90-1585 (1968), reprinted in 1968 U.S.C.C.A.N. 2873, 2965-73. "To the extent possible, the NFIP is designed to pay operating expenses and flood insurance claims with premiums collected on flood insurance policies rather than with tax dollars." *Studio Frames*, 483 F.3d at 243 (quotation marks and citation omitted).

Because premiums are subsidized, the NFIP is not self-sustaining, and "cannot accumulate sufficient reserves to cover catastrophic flood losses." *Id.* at 244. The NFIP relies on a "statutory line of credit at the U.S. Treasury to pay claims arising from catastrophic losses." *Id.* Nonetheless, the NFIP's providence has "reduced the amount of flood disaster relief needed from the federal government." *Id.*

The NFIA provides two alternative avenues for implementing the NFIP—a privately operated flood insurance program with federal assistance ("Part A"); or a federally operated program with private insurers' assistance ("Part B"). *See* 42 U.S.C. §§ 4041, 4051-4057, 4071-4072. Prior to 1978, the NFIP was implemented under Part A as a private industry program with federal assistance. *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 388 (9th Cir. 2000). Under this implementation, the federal government incorporated a private insurance pool called the National Flood Insurer's Association, which marketed, issued, serviced, and handled claims adjustments of flood insurance policies. *In re Estate of Lee*, 812 F.2d 253, 255 (5th Cir. 1987). The federal government's role was to prescribe the requirements for insurance companies' participation in the pool, to compensate insurance companies for policies in which the premiums were set below

established rates, and to provide reinsurance to cover flood losses that exceeded the insurance risk assumed by the industry pool. 42 U.S.C. §§ 4051, 4054, 4055.

Since 1978, the NFIP has been implemented under Part B as a federally operated program with private insurers' assistance.[2] *Flick*, 205 F.3d at 389. Under Part B, the director of FEMA is authorized to execute the NFIP "through the facilities of the Federal Government, utilizing . . . either"

> (1)    insurance companies and other insurers, insurance agents and brokers, and insurance adjustment organizations, as fiscal agents of the United States,
>
> (2)    such other officers and employees of any executive agency . . . as the Administrator and the head of any such agency may from time to time, agree upon, on a reimbursement or other basis, or
>
> (3)    both the alternatives specified in paragraphs (1) and (2).

42 U.S.C. § 4071(a). From 1978 to 1983, all federal flood insurance policies under the NFIP were issued directly by the federal government. *Flick*, 205 F.3d at 389. In 1983, however, FEMA promulgated regulations establishing the Write-Your-Own ("WYO") Program, which enabled FEMA to use participating private insurance companies ("WYO Companies") to provide, under their own names as insurers, flood insurance policies (SFIPs) to the public. *Id.* Approximately 95 percent

---

[2]In 1976, disagreement arose over the terms of the annual contract between the federal government and the insurance companies. This disagreement led the federal government to assume control of the NFIP under Part B. *See Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 678-79 (7th Cir. 2001).

of flood insurance policies under the NFIP are written through the WYO Program.[3] U.S. Dep't of Homeland Security, *Privacy Impact Assessment for the National Flood Insurance Programs Appeals Procedure*, 2 (Feb. 9, 2006), http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_fema_nfip appeals.pdf.

## C.   *The WYO Arrangement*

In 1985, by promulgated regulations, FEMA established the standardized terms of the arrangement between FEMA and WYO Companies (the "Arrangement"). Financial Assistance/Subsidy Arrangement, 50 Fed. Reg. 16236 (Apr. 25, 1985) (codified at 44 C.F.R. pt. 62, app. A); *see* 42 U.S.C. § 4128(a) (FEMA has authority to "issue such regulations as may be necessary to carry out the purpose of the [NFIP]."). The Arrangement is essentially a contract between FEMA and private insurance companies. *See* 44 C.F.R. pt. 62, app. A. FEMA sets the terms of the Arrangement and has the sole authority to amend it. *See id.* When it amends the terms of the Arrangement, however, FEMA considers comments from private insurance companies and other participants in the NFIP. *See, e.g.*, 61 Fed. Reg. 37687 (July 19, 1996) (addressing and amending the Arrangement based on comments raised by two WYO Companies).

FEMA codified the policy forms for the SFIPs and the forms cannot be "altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator." 44 C.F.R. § 61.13(a), (d). FEMA establishes the terms and conditions of the SFIPs offered to customers. 42 U.S.C. § 4013. FEMA issues written manuals specifying how WYO Companies must handle flood insurance premiums, and settle, pay, or defend flood claims. 44 C.F.R. pt. 62, app. A.

---

[3]FEMA directly sells and services Group Flood Insurance Policies written through the NFIP.

FEMA sets guidelines for companies that choose to participate in, and to remain in the WYO Program. 44 C.F.R. §§ 62.23, 62.24. For instance, the Arrangement requires that WYO Companies must be licensed under the state laws in which they practice. 44 C.F.R. pt. 62, app. A, art. II(D)(4). As is relevant to this appeal, under South Carolina law, to be a licensed insurer one must "pay[ ] all taxes and perform[ ] all duties required by law." S.C. Code Ann. § 38-5-90(c). In addition to South Carolina state-imposed license fees and taxes on insurers, *see* S.C. Code Ann. §§ 38-7-10, 38-7-20, South Carolina municipalities may also levy license fees or taxes, *see* S.C. Code Ann. § 38-7-160.

Under the Arrangement, when a WYO Company collects flood premiums, it is required to remit the premiums, less expenses (as explained below), to FEMA for deposit in the National Flood Insurance Fund in the U.S. Treasury. 42 U.S.C. § 4017; 44 C.F.R. pt. 62, app. A, arts. II(E), VII(B). Because the Arrangement forbids comingling of funds, if the WYO Company receives premiums in cash or check, it deposits the cash or check into a restricted account it maintains on behalf of the federal government ("Restricted Account"). *See* 44 C.F.R. pt. 62, app. A, arts. II(E), III(E). Where the customer pays the premium by credit card, however, the payments are made directly to the U.S. Treasury via a website established by the federal government. WYO Companies pay flood insurance claims from monies in the Restricted Account, or from their operating accounts and then are subsequently reimbursed from the Restricted Account. To the extent the amount in the Restricted Account is insufficient to cover the claims, the WYO Company draws upon a letter of credit from FEMA to meet the expenditures. *Id.* arts. II(E), IV(A), VII(A).

WYO Companies are liable for "operating, administrative and production expenses"

> including any *State premium taxes*, dividends, agents' commissions or any other expense of what-

ever nature incurred by the Company in the performance of its obligations under this Arrangement *but excluding other taxes or fees*, such as surcharges on flood insurance premium and guaranty fund assessments.

*Id.* art. III(A) (emphasis added). Thus, the Arrangement permits WYO Companies to retain a scheduled amount as reimbursement for these expenses ("Expense Allowance"). *Id.* art. III(B). Though the Expense Allowance fluctuates yearly, on average it is 30 percent of the WYO Company's written premiums. *See id.* Once the claims, Expense Allowance, and any additional reimbursement a WYO Company may be entitled to have been deducted, the WYO Company must remit any balance in the Restricted Account in excess of $5,000 to FEMA. *See* 44 C.F.R. pt. 62, app. A, art. VII(B); Appellants' Br. at 13-14. Appellants contend that they profit only when their actual administrative expenses in connection with the NFIP are less than the Expense Allowance.

### D.  *The* Omaha Property *Decision and the 2008 FEMA Memorandum*

In 2006, MASC filed an action in state court against a WYO Company, Omaha Property and Casualty Insurance Co. ("OPCI"), to collect approximately $200,000 in unpaid municipal taxes and penalties for 2003 and 2004. OPCI removed the action to the U.S. District Court for the District of South Carolina. *Municipal Ass'n of S.C. v. Omaha Prop. & Cas. Ins. Co.*, No. 3:06-CV-467 (D.S.C. Feb. 16, 2006). Thereafter, MASC filed a motion for partial summary judgment, and OPCI filed a motion for summary judgment. OPCI argued that any taxes based upon flood insurance premiums were impermissible taxes on the federal government and were preempted. The district court disagreed and denied OPCI's motion. OPCI moved for reconsideration, but before a final disposition of the action, the parties settled and the action was

dismissed. OPCI subsequently dropped out of the WYO Program in South Carolina.

Following the district court's decision in *Omaha Property*, FEMA issued a memorandum ("2008 FEMA Memo") directing WYO Companies not to pay the tax imposed by South Carolina municipalities. The 2008 FEMA Memo states, "premiums collected as payment for coverage under [the SFIPs] are Federal dollars, and as such, are not subject to State or local taxation." It explains that FEMA "consented to a single exception to this legal principle" by agreeing to "voluntarily pay State premium taxes on NFIP premiums in recognition of the service provided by State insurance departments in overseeing the solvency and conduct of WYO Companies, as well as the conduct and qualifications of agents and adjusters who work on behalf of the NFIP." The 2008 FEMA Memo expounds that in carving out this exception, FEMA did not "invalidate the Federal government's exemption from any taxes or assessments levied by any other level of government." Quoting language from the Arrangement, the 2008 FEMA Memo concludes that because the WYO Companies are "fiscal agents of the Federal government," they "are not liable for or authorized to pay any taxes and assessments levied on Federal flood insurance premiums not provided for under the Arrangement."

Since the 2008 FEMA Memo, WYO Companies doing business in South Carolina have varied in their treatment of the municipal tax—some willingly pay the tax, some pay under protest, and others simply refuse to pay the tax. Appellants fall in the latter two groups.

### E.   *District Court Proceedings*

MASC filed this action in the district court seeking a declaration that South Carolina municipalities are entitled to impose and collect municipal taxes from Appellants. In response, Appellants raised several affirmative defenses and

then moved to dismiss the declaratory judgment action on grounds that FEMA was a necessary and indispensable party under Federal Rule of Civil Procedure 19(b) that could not be joined because of its sovereign immunity. The district court agreed that FEMA was a necessary party, but held that the court could proceed in good faith without FEMA, so it denied the motion to dismiss.

Subsequently, Appellants moved for summary judgment asserting defenses of federal preemption and sovereign immunity. MASC also moved for partial summary judgment that the defense of preemption did not apply. The district court agreed with MASC, granted MASC's motion for partial summary judgment,[4] and denied Appellants' motion for summary judgment. Thereafter, Appellants moved the district court to certify this matter for interlocutory appeal, and the district court granted the certification. We accepted the appeal, and thus, we have jurisdiction pursuant to 28 U.S.C. § 1292(b).

## II.

Appellants raise three issues on appeal. First, they argue that FEMA regulations, the Arrangement, and the 2008 FEMA Memo instruct them not to pay the municipal tax, and thus, federal law preempts the tax. Second, they argue in the alternative, even if federal law did not preempt the tax, in their operation of the WYO Program, Appellants are "fiscal agents" of the federal government, and the municipal tax is an impermissible, unconsented-to tax on the federal government and federal property, in violation of federal sovereign immunity. Third, Appellants contend Rule 19(b) required the dis-

---

[4]In Appellants' answer to MASC's complaint, Appellants pled, *inter alia*, defenses of collateral estoppel, lack of standing, failure to exhaust administrative remedies, and lack of due process. Following the grant of partial summary judgment to MASC, Appellants abandoned all defenses not raised at the motion to dismiss or summary judgment stages. As such, beyond this appeal, no disputed issues remain.

missal of these actions for failure to join FEMA because MASC's real dispute is with FEMA, Appellants are merely FEMA's fiscal agents, and FEMA's sovereign immunity precludes it from being compelled to join these actions. We resolve this appeal by applying the basic tenets of sovereign immunity. Thus, we need not reach the preemption issue and the question of FEMA's indispensability is moot.

## III.

We review the grant or denial of a motion for summary judgment *de novo*. *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011). Issues pertaining to sovereign immunity are questions of law which we review *de novo*. *See S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 332 (4th Cir. 2008) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)).

It is well established that, pursuant to the Supremacy Clause of the U.S. Constitution, the federal government has absolute immunity from state regulation, including taxation. *Mayo v. United States*, 319 U.S. 441, 445, 446 (1943); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819). This immunity from tax applies when the levy falls on the federal government itself, its property, or "on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." *United States v. New Mexico*, 455 U.S. 720, 735 (1982); *see also Van Brocklin v. Tennessee*, 117 U.S. 151, 158 (1886). "It lies within Congressional power to authorize regulation, including taxation, by the state." *Mayo*, 319 U.S. at 446; *see United States v. City of Detroit*, 355 U.S. 466, 469 (1958). In the absence of congressional consent, a state or local tax on the federal government, its property, or its instrumentality is invalid. *City of Detroit*, 355 U.S. at 469.

These tax immunity principles present three questions in this appeal—whether: (1) the flood insurance premiums col-

lected by WYO Companies are federal property; (2) WYO Companies, in their participation in and operation of the WYO Program, are instrumentalities of the federal government; and (3) the federal government has consented to the municipal tax. We discuss each issue in turn.

A.

We first consider whether the flood insurance premiums are federal property. We have previously stated, "premiums collected on policies written by WYO Companies do not belong to those companies." *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 600 (4th Cir. 2002) (citing *Newton v. Capital Assurance Co.*, 245 F.3d 1306, 1311 (11th Cir. 2001)). Instead, the premiums belong to the federal government, and absent the federal government's consent, these funds may not be taxed.

MASC contends otherwise, and roots its contention in the fact that the premiums pass through the WYO Companies. MASC argues that the premiums are not federal funds until they reach the U.S. Treasury. This argument is untenable for several reasons.

First, the NFIA states that premiums collected under Part B by facilities of the federal government are credits to the National Flood Insurance Fund. 42 U.S.C. § 4017(a), (b)(2), (b)(6). The NFIA further states that those funds are "available for all purposes," including paying claims and "applicable operating costs." 42 U.S.C. § 4017(d). The NFIA allows such payments to be made "in advance or by way of reimbursement." 42 U.S.C. § 4123. It is of no moment that WYO Companies collect the premiums or that the premiums are held in a Restricted Account prior to remittance to the U.S. Treasury.

Additionally, the regulations refer to the premiums as "federal funds" and make no distinction as to the ownership of the premiums based on whether the WYO Companies retain or

use the funds, or remit them to the federal government. In the recitals section of the Arrangement, the contract contemplates that "participating private insurance companies act in a fiduciary capacity utilizing *Federal funds* to sell and administer the [SFIPs]." 44 C.F.R. pt. 62, app. A, art. I (emphasis added). In Article II, the Arrangement requires WYO Companies to "separate Federal flood insurance funds from all other Company accounts, at a bank or banks of its choosing for the collection, retention and disbursement of *Federal funds* relating to its obligation under this Arrangement, less the Company's expenses." *Id.* art. II(E) (emphasis added). In Article III of the Arrangement, WYO Companies are to make "[l]oss payments under policies of flood insurance . . . from *Federal funds* retained in the bank account(s) established under Article II." *Id.* art. III(D)(1) (emphasis added). That the premiums pass through the WYO Companies does not alter their very nature as federal funds.

Further, the 2008 FEMA Memo states that "the premiums collected as payment for coverage under the[ ] [SFIPs] are *Federal dollars*." (J.A. 102 (emphasis added)). An agency's interpretation of its own regulations is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation it interprets." *Stinson v. United States*, 508 U.S. 36, 45 (1993) (quotation marks and citation omitted), *accord Auer v. Robbins*, 519 U.S. 452, 461 (1997). FEMA's interpretation in the 2008 Memo does not appear plainly erroneous or inconsistent with 44 C.F.R. pt. 62. Thus, the interpretation that the premiums collected by the WYO Companies are federal funds is entitled to substantial deference.

In sum, the premiums collected by WYO Companies are federal funds and cannot be taxed by a state without the federal government's consent.

## B.

We next consider whether WYO Companies are, in their participation in and operation of the WYO Program, non-

taxable instrumentalities of the federal government. A taxed entity is closely connected to the federal government if taxation of the entity would be a "direct interference with the functions of government itself." *New Mexico*, 455 U.S. at 736 (citation and internal quotation marks omitted). "[A] finding of constitutional tax immunity requires something more than the invocation of traditional agency notions: to resist [a] State's taxing power, a private taxpayer must actually 'stand in the Government's shoes.'" *Id.* (citation omitted).

Under the NFIA's statutory framework, when the NFIP is implemented under Part B, as is currently the case, it is a federally operated program with private participation, as opposed to Part A's privately operated program with federal assistance. *Compare* 42 U.S.C. §§ 4071-72, *with* 42 U.S.C. §§ 4051-57. Under Part B, FEMA is required to carry out the NFIP "through the facilities of the Federal Government" utilizing either federal employees or insurance companies "as fiscal agents of the United States." 42 U.S.C. § 4071(a).

Appellants contend that in participating in the NFIP, WYO Companies may be likened to reserve banks, which are private corporations that hold funds belonging to the U.S. Treasury. The Banking Code refers to reserve banks as "fiscal agents," 12 U.S.C. § 391, and at least one court has held that notwithstanding their independence, reserve banks are federal instrumentalities immune from state and local taxation, unless consented to by Congress. *See Fed. Reserve Bank v. Metrocentre Improvement Dist.*, 657 F.2d 183, 186-87 (8th Cir. 1981), *aff'd*, 455 U.S. 995 (1982).

Appellants' analogy to reserve banks is not farfetched. Although the term "fiscal agent" is not defined in the United States Code, the dictionary defines the term as "[a] bank or other financial institution that collects and disburses money and services as a depository of private and public funds on another's behalf." *Black's Law Dictionary* 73 (9th ed. 2009). This definition encompasses several tasks of the WYO Com-

panies—they collect premiums on behalf of the federal government, remit the funds to the U.S. Treasury, and administer claim payments. It appears, as Appellants argue, in using the term "fiscal agent," Congress contemplated a close relationship between the federal government and WYO Companies, one akin to its relationship with reserve banks.

MASC contends that the close relationship between the federal government and the Federal Reserve banks is not like the relationship between the WYO Companies and the federal government. MASC points to several functions of Federal Reserve banks—for example, that they supervise and maintain the nation's banking system, clear checks and deposits, issue and maintain legal tender; that they are not profit-seeking and are not private businesses—and argues that the reserve banks "are more than fiscal agents." Appellee's Br. 36 (citing *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 277, 278, 283 (3d Cir. 2006)). Conversely, MASC argues, Appellants are private businesses, operate as for-profit enterprises, and have policies not governed by the United States.

MASC's arguments are weakened by our prior decision in *Studio Frames*, where we treated a WYO Company as an instrumentality of the federal government for interest purposes. 483 F.3d at 252. In part, *Studio Frames* considered whether an SFIP holder was entitled to pre- and post-judgment interest from a WYO Company for breach of the flood insurance contract. *Id.* Upon considering the framework of the NFIP, we reasoned, "the NFIP is not a commercial enterprise," because it did not engage in the business of flood insurance with the intent to make profit. *Id.* at 253. We further reasoned, "a suit against a WYO company is essentially a suit against FEMA. Likewise, a money judgment against a WYO company is essentially a judgment against the government." *Id.* at 252. The *Studio Frames* Court thus determined that because the NFIP is not a commercial enterprise, unless otherwise consented to, interest could not be recovered from the

WYO Company without contravening the principles of sovereign immunity.

*Studio Frames* informs us that WYO Companies "stand in the Government's shoes" when they administer the NFIP. Thus, because we have found that WYO Companies have sovereign immunity for interest purposes under the NFIP, we consistently conclude that in collecting premiums, WYO Companies are so closely connected to the federal government that a tax on a WYO Company based on the premiums collected is a tax on the federal government, and absent consent, they are immune from taxation.

## C.

We next consider whether the federal government consented to this tax of its property or instrumentalities. "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992) (internal quotation marks and citations omitted). On occasion, waiver would also be found where the narrowly construed broad language of a statute is consistent with Congress' clear intent to waive sovereign immunity. *Id.* at 34 (providing as an example the "'sweeping language' of the Federal Tort Claims Act" (citations omitted)). Nonetheless, the federal government's waiver of sovereign immunity must be "construed strictly in favor of the [federal government]." *Id.* at 34.

No provision of the NFIA or the Arrangement meets this "unequivocal expression" requirement with respect to the municipal tax. Neither is there clear Congressional intent to consent to the municipal tax on its property or instrumentalities. Instead, what is clear is FEMA has waived sovereign immunity as to "State premium taxes" but no "other taxes." 44 C.F.R. pt. 62 app. A, art. III(A). Municipal taxes are not State premium taxes and therefore, are not within the waiver of immunity. This conclusion is consistent with the 2008 FEMA

Memo—FEMA's own interpretation of its regulation, which is entitled to controlling weight. *See Auer*, 519 U.S. at 461.

MASC attempts to evade this result by arguing the tax is not on the federal premiums themselves. Instead, they argue, the premiums are merely a measure for determining how much license taxes should be imposed on insurance companies doing business within their locale. MASC further contends that it does not require that Appellants satisfy the municipal tax by expending federal funds, and "it makes no difference to MASC where the funds used to pay the tax originate." These arguments are unavailing.

If WYO Companies fail to collect flood insurance premiums, notwithstanding their advertisements and other business activities within the municipalities, the municipal tax could not be imposed as the tax is based on gross premiums collected. Moreover, regardless of the delineation of the tax, whether it is a municipal *license* or *premium* tax does not invalidate the basic principle that the federal government has not consented to the tax and thus, it is invalid.

Because the tax is levied on the federal government's property and its instrumentality, without consent, the tax is impermissible and the district court erred in granting partial summary judgment to MASC and denying Appellants' motion.

IV.

The district court erred in concluding the doctrine of sovereign immunity did not bar the municipal tax. The flood insurance premiums are federal property that cannot be taxed and the WYO Companies, in their operation of and participation with the NFIP, are federal instrumentalities so closely connected with the federal government that they are immune from taxation. The federal government did not consent to this tax, and it is therefore invalid. Accordingly, we reverse the

district court's grant of partial summary judgment to MASC and denial of summary judgment to Appellants.

*REVERSED*